# STATE OF MICHIGAN

# COURT OF APPEALS

JERZY JANOVSKI and ROZANNE JANOVSKI,

       Plaintiffs-Appellants,

v

S. J. FERRARI INSURANCE AGENCY, INC.,
and SAMUEL C. FERRARI,

       Defendants-Appellees.

UNPUBLISHED
May 24, 2016

No. 326457
Wayne Circuit Court
LC No. 14-003957-CK

Before: BOONSTRA, P.J., and METER and BECKERING, JJ.

PER CURIAM.

This case involves claims by plaintiffs, Jerzy and Rozanne Janovski, that their insurance agents, defendants Samuel C. Ferrari and S.J. Ferrari Insurance Agency, Inc., were negligent in failing to advise them about the adequacy of their renter's insurance, specifically as it pertained to Jerzy's tool collection. The trial court granted defendants' motion for summary disposition. Plaintiffs appeal as of right, and we affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2003, plaintiffs, a married couple, moved to a rental property on Piedmont Street in Detroit. For most of his working life, Jerzy was employed as a mechanic, and he acquired two large collections of tools. He kept one collection at his residence on Piedmont Street and kept the other collection at his place of employment. Although both sets of tools were his personal property, he testified that he kept one set of tools at his place of employment because employers in his line of work expected employees to have their own sets of tools for use at work.

While plaintiffs were moving into the home on Piedmont in 2003, a neighbor suggested that they obtain renter's insurance, so plaintiffs contacted defendants. In approximately October 2003, an employee[1] at S.J. Ferrari Insurance Agency helped plaintiffs obtain a renter's policy

---

[1] It is not clear who the employee was. There is some suggestion that it was an individual named Anne Fournier; however, when Jerzy testified in his deposition about the employee, he used the pronoun "he" to describe the employee.

with Home-Owners Insurance. The policy that defendants procured for plaintiffs had a personal property limit of $100,000. According to Jerzy's deposition testimony, Rozanne discussed the policy with the agent on the telephone, and Jerzy sat next to Rozanne and overheard the conversation. Jerzy testified that "I think" Rozanne requested $100,000 in coverage for his tools that were stored at the residence. Plaintiffs did not disclose the existence of the second set of tools stored at Jerzy's place of employment, and it is undisputed that they never specifically requested coverage for these tools.

As to the limits of the policy, Jerzy testified "I think" that the agent with whom Rozanne spoke said he could not offer more than $100,000 worth of coverage for personal property. Jerzy said that at the time of the application for insurance, he believed that $100,000 was enough for the tools, but not the rest of plaintiffs' personal property. Rozanne testified in her deposition, however, that although she could not remember much of the conversation with the insurance agent, $100,000 was "probably" enough to cover all of Jerzy's and her personal property. Jerzy recalled that Rozanne "mentioned tools to [the agent]; and she mention[ed], you know, we got [sic] lots of tools." Jerzy testified that after plaintiffs completed the application for insurance, there were never any discussions about increasing the policy limit of $100,000 for personal property coverage.

In 2005, Home-Owners cancelled plaintiffs' policy because plaintiffs failed to pay their premiums. As a result, plaintiffs returned to defendants, who assisted them in obtaining a new renter's policy with Frankenmuth Insurance; plaintiffs' Frankenmuth policy and defendants' role in procuring that policy form the basis of this appeal. The record contains no testimony about any discussions plaintiffs had with defendants at the time they applied for the Frankenmuth policy. The Frankenmuth policy had a general personal property limit of $106,200; this limit was set to increase annually at the time of renewal in order to adjust for inflation.

The Frankenmuth policy contained a limitation that is particularly pertinent to this case. Beginning in 2005—and in every renewal of the policy—the policy contained, under a heading entitled "Special Limits of Liability," a limitation of $2,500 for "property, on the residence premises, used at any time or in any manner for any business purpose." It is this limitation that forms the crux of plaintiffs' arguments on appeal; plaintiffs claim that defendants should have advised them about this limitation.

Plaintiffs suffered two losses occasioned by theft. The first occurred in September 2010. Thieves broke into the rental home and garage and stole numerous personal property items, including the tool set Jerzy stored in the garage. Plaintiffs claimed losses in excess of $180,000 with Frankenmuth after the break-in. Although plaintiffs' policy limit at the time was $134,000, they settled the claim with Frankenmuth for $100,000.[2]

---

[2] During settlement negotiations, Chantel Saincome, a claims adjuster at Frankenmuth, informed plaintiffs' former attorney about the $2,500 policy limit for personal property that was used for business purposes, as set forth in plaintiffs' policy. It is unclear whether plaintiffs' former attorney communicated this limit to plaintiffs, although counsel for Frankenmuth mentioned at

At some point after the 2010 break-in, Jerzy moved the collection of tools that he stored at his place of employment to his personal residence. Thereafter, in July 2011, the residence was broken into a second time. The thieves stole Jerzy's tools, along with other personal items. Rozanne discovered the break-in shortly after it occurred in July 2011; however, according to Frankenmuth's Claim Activity Log, Rozanne did not inform Frankenmuth of the loss until May 2012. The Claim Activity Log shows that the first report of the theft mentioned the theft of guns, gun safes, a television, and some jewelry. Later, in August 2012, the Claim Activity Log notes a report indicating that plaintiffs mentioned that Jerzy's tools had been stolen.

Following this second break-in, plaintiffs submitted a claim for $342,000 with Frankenmuth, expecting to receive the policy limits. In response, Frankenmuth, which had learned that Jerzy's second set of tools had been used for business purposes, informed plaintiffs that it was going to apply the $2,500 coverage limit for personal property that had been used for business purposes. It is unclear from the record how much plaintiffs sought for the tools in their claim, but it was well over $2,500.

Plaintiffs filed a complaint against defendants in 2014, arguing that defendants had a duty to advise them of the $2,500 limit that Frankenmuth applied to Jerzy's tools that were stolen in the second break-in, and that defendants failed to ensure that they received adequate insurance coverage. Plaintiffs alleged that defendants were negligent in procuring the Frankenmuth policy, and blamed defendants for their inability to recover the full amount of their loss in the claim with Frankenmuth. The only specific property items noted in the complaint were Jerzy's tools.

The trial court granted defendants' motion for summary disposition, agreeing with defendants that they did not have a duty to advise plaintiffs about the adequacy of coverage, pursuant to our Supreme Court's decision in *Harts v Farmers Ins Exch*, 461 Mich 1; 597 NW2d 47 (1999).

## II. ANALYSIS

### A. STANDARD OF REVIEW

This appeal involves a trial court's summary disposition ruling, which this Court reviews de novo. *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 713; 848 NW2d 482 (2014). Because the trial court relied on facts outside the pleadings when it granted the motion, we consider the motion to have been granted pursuant to MCR 2.116(C)(10). See *Limbach v Oakland Co Bd of Rd Comm'rs*, 226 Mich App 389, 395 n 3; 573 NW2d 336 (1997). "In evaluating a motion for summary disposition brought under Subrule (C)(10), a reviewing court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 75; 854 NW2d 521 (2014). "Summary disposition is properly

---

one point during Jerzy's examination under oath that the purpose of the examination was to determine whether the tools claimed in the first loss were used for business purposes. It is also unclear how much, if any, of the $100,000 settlement was for Jerzy's tools.

granted if the proffered evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*.

## B. DUTY TO ADVISE-*HARTS*

Plaintiffs contend that defendants were negligent in failing to advise them of a policy limitation that prevented them from recovering the full value of Jerzy's tool set following the July 2011 break-in. "In a negligence action, a plaintiff must show that the defendant owed the plaintiff a duty, that the defendant breached that duty, causation, and damages." *Pressey Enterprises, Inc v Barnett-France Ins Agency*, 271 Mich App 685, 687; 724 NW2d 503 (2006). It is the first element—duty—with which we are concerned in this case. "Whether a duty exists is a question of law that is solely for the court to decide." *Harts*, 461 Mich at 6.

Plaintiffs' arguments can essentially be boiled down to an assertion that defendants owed a duty to advise them about the $2,500 limitation on personal property when such property had been used for business purposes. As the trial court recognized, our Supreme Court's decision in *Harts*, 461 Mich 1, is a leading case on an insurance agent's duty to advise an insured. At issue in that case was whether a "licensed insurance agent owes an affirmative duty to advise or counsel an insured about the adequacy or availability of coverage." *Id*. at 2. The plaintiffs in that case, Tyrone and Gloria Harts, obtained a Farmers Insurance policy through their insurance agent, Gregory Pietrzak, who sold insurance exclusively for Farmers, i.e., he was a captive agent. *Id*. at 3. The policy did not include uninsured motorist coverage. *Id*. At issue in that case was whether Pietrzak was negligent in selling the plaintiffs a policy that was inadequate because it did not include uninsured motorist coverage. *Id*. at 3.

In analyzing whether there was a duty to advise regarding the lack of uninsured motorist coverage, the Court noted that Pietrzak was Farmers' agent, and as such, "under the common law, he had a duty to comply with the various fiduciary obligations he owed to Farmers and to act for its benefit." *Id*. at 6-7. "Moreover," the Court noted that, because Pietrzak was Farmers' agent, "he had no common-law duty to advise plaintiffs." *Id*. The Court also noted the general rule that insurance agents have no duty to advise an insured regarding the adequacy of insurance coverage. *Id*. at 7.

The no-duty-to-advise rule was supported, in part, by "[s]ound policy reasons[.]" *Id*. Citing a Wisconsin case, *Nelson v Davidson*, 155 Wis2d 674, 680-681; 456 NW2d 343 (1990), the Court explained that a contrary rule, i.e., a rule requiring a duty on the part of an insurance agent to advise the insured about the adequacy of coverage,

> would remove any burden from the insured to take care of his or her own financial needs and expectations in entering the marketplace and choosing from the competitive products available, (2) could result in liability for a failure to advise a client of every possible insurance option, or even an arguably better package of insurance offered by a competitor, and (3) could provide an insured with an opportunity to self-insure after the loss by merely asserting they would have bought the additional coverage had it been offered. [*Id*. at 7-8 (quotation marks omitted.]

-4-

"Thus, under the common law," explained the Court, "an insurance agent whose principal is the insurance company owes no duty to advise a potential insured about any coverage. Such an agent's job is to merely present the product of his principal and take such orders as can be secured from those who want to purchase the coverage offered." *Id*. at 8.

In support of this view, the Court remarked that "[o]ur Legislature also recognizes the limited nature of the agent's role." *Id*. The Court explained that under Michigan's insurance statutes, insurance agents are distinct from insurance counselors, "with agents being essentially order takers" and insurance counselors functioning as advisors. *Id*. at 8-9. To support the idea that agents were mere "order takers," the Court cited MCL 500.2116(1), which describes the conditions of licensure for "[a] duly licensed insurance agent *licensed to represent 1 or more insurers* . . . ." (Emphasis added). Those conditions include a requirement that the agent provide prospective insureds with a premium price for the types of coverage that are offered by various insurers that the agent represents, MCL 500.2116(1)(a), and that the agent submit an application for a prospective insured "to the insurer selected by the eligible person," MCL 500.2116(1)(d). *Harts*, 461 Mich at 9 n 9, citing MCL 500.2116. The Court contrasted these duties with those imposed on insurance counselors under MCL 500.1232, which provides that "[a] person shall not . . . provide advice, counsel, or opinion with respect to benefits promised, coverage afforded, terms, value, effect, advantages, or disadvantages of a policy of insurance . . . unless he or she is licensed as an insurance counselor. . . . *This section does not prohibit the customary advice offered by a licensed insurance agent nor does this section apply to a person admitted to the practice of law in this state*." *Harts*, 461 Mich at 9 n 10, citing MCL 500.1232 (emphasis added). Based on MCL 500.2116 and MCL 500.1232, the Court in *Harts*, 461 Mich at 9 n 10, concluded that "as part of his function as an order taker, an insurance agent may, but is not required or under any duty to, give 'customary advice.' "

As is the case with most general rules, the Court noted that there is an exception to the no-duty-to-advise rule in certain circumstances. *Id*. at 9-10. The exception is implicated when "an event occurs that alters the nature of the relationship between the agent and the insured" and gives rise to a "special relationship" pursuant to which the agent has a duty to advise the insured. *Id*. at 10, citing *Bruner v League Gen Ins Co*, 164 Mich App 28; 416 NW2d 318 (1987) (quotation marks omitted). A special relationship requires " 'some type of interaction on a question of coverage . . . .' " *Id*., quoting *Bruner*, 164 Mich App at 34. The Court described four scenarios that give rise to a special relationship and a duty to advise on the part of the agent:

> (1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured. [*Id*. at 10-11.]

## C. APPLICABILITY OF *HARTS*

Noting that the agent in *Harts* was a captive or exclusive insurance agent, plaintiffs urge this Court to find that *Harts* does not apply with respect to the duty owed here because defendants in the instant case are independent agents. Plaintiffs correctly point out that "[t]he fiduciary duty that the insurance agent owes each party varies in relation to the agent's status as

an independent or exclusive agent." See *Genesee Foods Servs, Inc v Meadowbrook, Inc*, 279 Mich App 649, 654; 760 NW2d 259 (2008). An independent agent is considered an agent of the insured, rather than an agent of the insurer. *Id*. In this case, defendants were independent agents, and thus, they were acting as plaintiffs' agents, not Frankenmuth's. An independent insurance agent has a fiduciary duty of loyalty that rests with the insureds, who can "depend on this duty of loyalty to ensure that [independent agents] were acting in their best interests, both in terms of finding an insurer that could provide them with the most comprehensive coverage and in ensuring that the insurance contract properly addressed their needs."[3] *Id*. at 656. Plaintiffs argue that in light of defendants' status as plaintiffs' agents, *Harts* does not apply with respect to the duty to advise plaintiffs regarding the adequacy of their coverage.

In several unpublished decisions, this Court has rejected arguments similar to plaintiffs' contentions. See, e.g., *Hohensee v Nasser Ins Agency, Inc*, unpublished opinion per curiam of the Court of Appeals, issued November 3, 2015 (Docket No. 321434); *Janndorhas Enterprises, LLC v Walker Ins Agency, Inc*, unpublished opinion per curiam of the Court of Appeals, issued April 16, 2015 (Docket No. 320010); *Richardson v Grimes*, unpublished opinion per curiam of the Court of Appeals, issued January 21, 2014 (Docket No. 312782); *Nokielski v Colton*, unpublished opinion per curiam of the Court of Appeals, issued January 4, 2011 (Docket No. 294143).[4] Although *Harts* was clearly focused on insurance agents whose principal was the

---

[3] Plaintiffs fault the trial court for failing to recognize a fiduciary duty on the part of defendants. They contend the trial court erred by finding that defendants did not owe them a fiduciary duty. A review of the trial court's comments at the summary disposition hearing, however, reveals that the trial court never made such a finding. Rather, the court held that the issue raised in this case—whether defendants had a duty to advise plaintiffs about the $2,500 limitation—was controlled by our Supreme Court's decision in *Harts*, notwithstanding any caselaw about independent agents.

[4] We also readily acknowledge that other unpublished opinions of this Court have concluded that *Harts* was inapplicable in cases involving independent agents. See *Micheau v Hughes & Havinga Ins Agency*, unpublished opinion per curiam of the Court of Appeals, issued May 21, 2013 (Docket No. 307914) (refusing to apply *Harts* because the case at bar involved an independent agent and because it did not involve allegations about the agent's duty to advise the insured); *Deremo v TWC & Assoc, Inc*, unpublished opinion per curiam of the Court of Appeals, issued August 30, 2012 (Docket No. 305810); *Stover v Secura Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued June 9, 2005 (Docket Nos. 252613; 252625); *Mink v Leader Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued September 20, 2002 (Docket No. 233256). Instead of relying on *Harts*, these cases relied on the duties of an independent agent as defined in cases such as *Genesee Foods Servs*, 279 Mich App 649. See *Micheau*, unpub op at 4-5; *Deremo*, unpub op at 4-5. For instance, in *Deremo*, the panel analyzed the plaintiff's claim of negligence against the independent agent by noting that the agent's primary duty of loyalty was with the insured, who depended on the independent agent to act in the insured's best interest in (1) finding an insurer that could provide them with the most comprehensive coverage; and (2) ensuring that the insurance policy properly addressed the needs of the insured. *Deremo*, unpub op at 5, citing *Genesee Foods Servs*, 279 Mich App at 656.

insurer, it spoke generally about whether there is any duty owed by insurance agents as to the limited issue of advising about the adequacy or availability of coverage. We concur with the reasoning employed in the above cited cases in concluding that the duty to advise rule from *Harts*, regarding the adequacy or availability of coverage, also applies to an independent agent.[5] While the defendant in *Harts* was a captive rather than an independent insurance agent, *Harts* did not differentiate when framing the issue and rendering its ruling:

> We granted leave in this case to determine whether a licensed insurance agent owes an affirmative duty to advise or counsel an insured about the adequacy or availability of coverage. We hold that, except under very limited circumstances not present in this case, an insurance agent owes no such duty to the insured. [*Harts*, 461 Mich at 2].

The Court also made the following public policy argument:

> plaintiffs encourage this Court to eliminate the general no-duty-to-advise rule and replace it with a rule that would impose a duty to advise in cases such as the one at bar, which, to be perfectly clear, would apparently be all cases concerning the purchase of insurance. However, we decline this invitation in light of the public policy established by the Legislature's active role[6] in this area and the previously noted compelling reasons that militate against the imposition of such a duty. Rather, we agree with the Wisconsin Supreme Court in *Nelson, supra* at 683, 456 NW2d 343[7], which, when faced with such an issue, stated that "if such a duty is to be imposed on the [insurance agent], it should be imposed as a statutory one and not an implied judicial one. [*Harts*, 461 Mich at 11-12.]

---

[5] Although unpublished cases are not binding precedent, this Court may consider them as persuasive authority. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

[6] This is a reference to the idea that insurance agents have been viewed as "order takers," not "insurance counselors" by our Legislature. See *Harts*, 461 Mich at 8-9, citing MCL 500.2116 and MCL 500.1232.

[7] In *Nelson v Davidson*, 155 Wis 2d 674, 680; 456 NW2d 343 (1990), the Wisconsin Supreme Court noted that "the vast majority of other jurisdictions hold that the general duty of care which an insurance agent owes a client does not include the obligation to advise of available coverages." It then quoted what it deemed to be the seminal case on the issue of what duty an insurance agent owes a client: " 'Clearly, the ordinary insurance solicitor only assumes those duties normally found in an agency relationship. In general, this includes the obligation to deal with his principal in good faith and to carry out his instructions. No affirmative duty to advise is assumed by the mere creation of an agency relationship.' " *Id* at 681, quoting *Hardt v Brink*, 192 F Supp 879, 880 (WD Wash 1961).

Further, the Court discussed MCL 500.2116 and how it treats captive agents the same as independent agents with regard to order-taking functions, as well as MCL 500.1232, which restricts those who can give advice about insurance policies to licensed insurance counselors, aside from "the customary advice offered by a licensed insurance agent." See also *Harts*, 461 Mich at 8-9. Hence, the Court in *Harts* concluded, a licensed insurance agent may give "customary advice," but is not under any duty to do so. *Id*. at 9 n 10. Additionally, we note, as did the panel in *Nokielski*, unpub op at 4, nothing in the Court's opinion in *Harts* specifically indicated that the Court only intended to address captive agents, rather than independent agents, with regard to the duty at issue. And, although plaintiffs cite cases such as *Genesee Foods Servs*, for the idea that independent agents owe a fiduciary duty to the insured, those cases do not expressly mention a duty to advise the insured about the adequacy of coverage. Accordingly, we conclude that *Harts* applies to the issue before us.

Under *Harts*, plaintiffs needed to establish a special relationship arising from one of the following four scenarios in order to avoid the no-duty-to-advise rule:

> when (1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured. [*Harts*, 461 Mich at 10-11.]

Plaintiffs contend that the statements by Rozanne about plaintiffs having "lots of tools" and that they would need more than $100,000 in coverage gave rise to a special relationship. According to plaintiffs, this request was ambiguous and imposed upon defendants a duty to ask follow-up questions in order to procure the most relevant and comprehensive policy. This argument lacks merit. At the outset, it should be noted that all the statements upon which plaintiffs purport to rely pertain to their procurement of a policy in 2003 with Home-Owners; there is scant evidence of any statements made to defendants when procuring the Frankenmuth policy at issue. Moreover, examining the statements made in relation to the 2003 policy with Home-Owners, it is apparent from Rozanne's deposition that she simply informed defendants that plaintiffs had "lots of tools," and nothing in the record demonstrates any statements by Rozanne that plaintiffs' tools were sometimes used for business purposes or that a $2,500 business limitation would be an issue. There is no record evidence of any statements about any tools being used for business purposes, such that defendants should have made additional inquiries. And, significantly, Jerzy admitted that he never told defendants that he had a separate set of tools stored at his place of employment, or that he planned on moving those tools to his residence after the first set had been stolen. There was no ambiguous request that could establish a special relationship under *Harts*.

Plaintiffs also contend that they can show a special relationship under the first and third "special relationship" scenarios—an agent misrepresents the nature or extent of coverage and an agent gives inaccurate advice in response to an inquiry—and they raise allegations about misrepresentations or inaccurate advice regarding the $100,000 policy limit in the Home-Owners policy. These allegations stem from Jerzy's deposition testimony that he thought he overheard an employee of the S.J. Ferrari Insurance Agency inform Rozanne that $100,000 was the highest amount of coverage available for personal property on a renter's policy. Plaintiffs contend that

this advice was either inaccurate[8] or it was a misrepresentation. Setting aside the issue of whether plaintiffs allegations are accurate and whether they could give rise to a duty to advise, plaintiffs fail to explain how any representations or misrepresentations as to whether $100,000 was the highest amount of coverage available for a 2003 policy with Home-Owners have anything to do with the $2,500 limitation at issue. Indeed, regardless of whether the policy limit was $100,000 or $1 million for personal property losses, the fact remains that the $2,500 policy limitation at issue limited the amount of coverage for any tools or personal property used for business purposes. Plaintiffs' complaint only raised allegations about the second loss—the set of tools stolen in July 21 and to which the $2,500 limit applied. Their brief on appeal confirms that the claim was made "for this second theft loss, which is the subject of the matter," and involved allegations "that the Frankenmuth policy apparently limited coverage at $2,500 for personal property that had *ever* been used for work purposes . . . ." Accordingly, even assuming a duty could have arisen out of a misrepresentation or inaccurate advice about the highest amount of coverage available for personal property on a renter's policy, plaintiffs would be unable to show that this misrepresentation or inaccurate advice caused the injury about which they complain. Due to the lack of causation, plaintiffs' claims in this regard are without merit. See *Pressey*, 271 Mich App at 687 (describing the elements of a negligence claim).[9]

---

[8] In support of their claim that the advice was inaccurate, plaintiffs cite Samuel Ferrari's deposition testimony. Although plaintiffs attached the deposition to their brief on appeal, the deposition transcript is not in the record that was provided to this Court, and plaintiffs are not permitted to expand the record on appeal. *In re Harper*, 302 Mich App 349, 360 n 3; 839 NW2d 44 (2013).

[9] We also reject plaintiffs' cursory contention that a policy limitation applying to firearms gave rise to a duty to advise. Plaintiffs reported the loss of a $20,000 firearm collection after the July 2011 theft. The policy limited coverage for firearms to $2,000. Plaintiffs' complaint never mentioned the firearms, and we could decline to consider this matter that was never pled below. See *Heydon v MediaOne*, 275 Mich App 267, 278; 739 NW2d 373 (2007). Moreover, in his deposition, Jerzy testified that plaintiffs never informed defendants about their firearms when they were applying for insurance. Thus, there is no evidence of misrepresentations about the firearms, ambiguous requests about them, inaccurate advice given, or any express agreements or promises to plaintiffs about the firearms. See *Harts*, 461 Mich at 10-11.

## III. CONCLUSION

Because we find that the trial court did not err in applying *Harts* and because plaintiffs failed to establish a special relationship, we affirm the trial court's grant of summary disposition to defendants.[10]

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Jane M. Beckering

---

[10] Given our resolution of this issue, it is unnecessary to address plaintiffs' arguments concerning the trial court's alternative grounds for granting summary disposition.