*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PIERCE & PITT TRUCKING, INC.,

      Plaintiff-Appellee/Cross-Appellant,

v

SECURA INSURANCE,

      Defendant-Appellant/Cross-Appellee,

and

MICHIGAN COMMUNITY INSURANCE
AGENCY, INC.,

      Defendant-Cross-Appellee.

UNPUBLISHED
April 21, 2022

No. 355400
Macomb Circuit Court
LC No. 2017-002464-NI

Before: LETICA, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

In this action for breach of contract and negligence, defendant Secura Insurance (Secura) appeals as of right the bench trial verdict in favor of plaintiff Pierce & Pitt Trucking, Inc. (PPT). PPT cross-appeals the trial court order denying its motion for sanctions against Secura and defendant Michigan Community Insurance Agency, Inc. (MCIA). We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On September 21, 2016, six individuals were traveling in a vehicle when they were involved in an accident with a 1994 Hendrickson motor vehicle (HME) driven by Kenneth Pitt in the course of his employment for PPT. PPT was owned by Brian Pitt (Brian) and managed by Patricia Pitt (Patricia) who handled billing and payroll. Since 1995, Brian had met yearly with James Powers of MCIA to address PPT's insurance needs for the vehicles used in its trucking business. Additionally, throughout the year, Brian would add and delete vehicles from PPT's insurance policy. For example, Brian might make changes to his insurance policy if a truck broke

-1-

down or if he did not have a driver for the truck. In the event of a breakdown, Brian would limit the insurance to fire and theft.

In early 2016, the HME was registered to Pierce & Pitt Supply, Inc. (PPS), a material supply company, and insured with Grange Insurance when Powers and Brian met to discuss Brian's insurance needs. According to Brian, no one else at PPT negotiated or handled the automotive insurance needs for the company. To achieve savings on the insurance policy, Powers proposed Brian accept the policy quoted by Secura, which included the HME. Brian agreed to the Secura policy, but requested that the HME be deleted from the policy because it was insured with Grange Insurance through July 2016. At that time, Brian did not have a driver for the HME. Brian paid the premium for the Secura policy in installments.

On May 10, 2016, Brian believed that he had a driver for the HME. Consequently, he contacted Powers to add the HME to the Secura policy. Powers spent the majority of his time on the road meeting with clients and Beverly Marshall (Marshall) of MCIA handled administrative or computer functions involving 95% of Powers' clients. Marshall was notified of the request to add the HME to the Secura policy, and she issued a certificate of insurance effective May 10, 2016, through April 1, 2017. MCIA had entered into an agency agreement with Secura, and MCIA was authorized to bind Secura and issue policies of insurance.

The driver anticipated to start work for PPT fell through. In late May 2016, after the funeral for Brian's father, Kenneth agreed to drive for PPT. In anticipation of Kenneth's start date, Brian asked Patricia for a check to change the registration of the HME from PPS to PPT. At the Secretary of State's (SOS) office, Brian presented the certificate of insurance and paid $1,492.83 to successfully transfer the HME's registration. During the week of May 27, 2016, Kenneth began working for PPT and was trained to drive on the HME.

In the interim, on May 16, 2016, Laura Bowers, an underwriter for Secura, was investigating the risk associated with insuring the HME. Bowers acknowledged that a certificate of insurance had been issued for the HME, that Marshall had the authority to issue the certificate on Secura's behalf, and that Marshall had binding authority as Secura's agent. In the course of the underwriting process, Bowers emailed Marshall for additional information regarding the HME's vehicle identification number (VIN). On May 27, 2016, Marshall advised Bowers via e-mail that PPT no longer wanted to insure the HME. Consequently, Bowers never completed the underwriting process, and an endorsement was not issued that formally added the HME to the Secura policy. Bowers noted that insurance coverage would have only been available for the HME between the time the certificate of insurance was issued on May 10, 2016, and the date the underwriting process was suspended on May 27, 2016.

After the September 21, 2016 accident, Brian contacted Powers to process the insurance claim for the accident involving the HME. Secura denied the claim, alleging that the HME was never added to PPT's insurance policy. PPT then filed a claim alleging breach of contract and

negligence[1] against Secura and MCIA for failing to procure the requested insurance and breach of the standard of care.

Multiple motions for summary disposition were filed by the parties. Secura moved for summary disposition contending that it was not liable because MCIA was the agent of the insured PPT. The trial court denied the motion subject to the disclosure of the agency agreement between MCIA and Secura. Secura renewed this motion for summary disposition and submitted the pertinent documentation. The trial court denied this motion, concluding that in light of the language of the agency agreement MCIA served as a dual agent for both PPT and Secura.

PPT also moved for summary disposition, contending that it never withdrew its request to insure the HME on the Secura policy. In contrast, MCIA presented the deposition testimony of Marshall. Therein, Marshall averred that Patricia requested that the insurance for the HME be withdrawn because the truck was not operable and did not have a driver. However, Marshall did not obtain written confirmation of this request from Patricia, and Marshall did not document the request in MCIA's internal data program known as the "AMS system." And Patricia denied that she was responsible for or knowledgeable about the automotive insurance for PPT. Patricia testified that she never telephoned Marshall and requested the withdrawal or removal of the HME from the Secura policy. Patricia also testified that her communication with MCIA was at Brian's request, and he made any automotive insurance decisions. Brian likewise denied any request to withdraw or remove the HME from the Secura policy. The trial court found that the disputed testimony created a factual issue.

At trial, MCIA presented expert testimony from Michael S. Hale. Hale had 30-plus years as an insurance agent and was an insurance attorney. Hale opined that if Patricia verbally instructed Marshall that PPT no longer desired to insure the HME because it was inoperable and PPT had no driver, Marshall did not violate the standard of care in conveying that message to Secura. If, however, the Pitts did not so instruct Marshall, "that is a clear breach of the standard of care." In other words, if Marshall removed coverage without being authorized to do so, Hale opined she breached the standard of care.

Following the bench trial, the trial court concluded that the testimony proffered by Brian and Patricia was credible. Therefore, a verdict was rendered in favor of PPT. However, the trial court denied PPT's motion for sanctions against MCIA and Secura for raising a frivolous defense. From these rulings, the parties appeal.

## II. STANDARDS OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material

---

[1] The six individuals involved in the vehicular accident with the HME initially filed suit against PPT, among others, and PPT filed a third-party complaint against Secura and MCIA. However, the trial court bifurcated the action. Thus, the nature of the complaint was changed to reflect an original, not a third-party, action.

fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties in the light most favorable to the nonmoving party. MCR 2.116(G)(4), (G)(5); *Buhl v City of Oak Park*, 507 Mich 236, 242; 968 NW2d 348 (2021).

The proper interpretation of a contract presents a question of law reviewed de novo. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2013). An insurance policy is construed in the same manner as any other type of contract. *Meemic Ins Co v Bischer*, 323 Mich App 153, 157; 915 NW2d 1 (2018) (citation omitted). Whether the equitable relief of reformation of a contract is proper under a particular set of facts presents question of law that is also reviewed de novo. See *Johnson Family LP v White Pine Wireless, LLC*, 281 Mich App 364, 371-372; 761 NW2d 353 (2008). On appeal, the trial court's factual findings rendered in a bench trial are reviewed for clear error, but its conclusions of law are reviewed de novo. *Florence Cement Co v Vettraino*, 292 Mich App 461, 468; 807 NW2d 917 (2011). "A factual finding is clearly erroneous if there is no substantial evidence to sustain it or if, although there is some evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Miller-Davis Co*, 495 Mich at 172-173. The clear error review of factual findings also gives deference to the trial court's superior ability to assess the credibility of the witnesses. *Id*. at 172.

## III. CERTIFICATE OF INSURANCE

Secura first contends that the trial court erroneously concluded that the certificate of insurance issued by MCIA for the HME entitled PPT to coverage on the date of the accident because the certificate of insurance was essentially a "worthless" document that merely certified that insurance was in existence on the date of issuance. However, our review of the trial court's pertinent opinions indicate that the trial court failed to render any such ruling regarding the import and effective dates of the certificate of insurance. Rather, the trial court's dispositive ruling was contingent on its assessment of the credibility of the witness testimony addressing the withdrawal of the request for insurance on the HME. When an appellant fails to challenge or dispute the basis of the trial court's ruling, the appellate court need not even consider granting the relief requested. *Redmond v Heller*, 332 Mich App 415, 449; 957 NW2d 357 (2020); *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004).

We recognize Secura's argument that the policy of insurance was not amended or modified through an endorsement to include the HME despite the issuance of the certificate of insurance. However, Secura's contention that the insurance policy must control and that Brian should have read the policy to determine that he did not have and pay for insurance coverage on the HME ignores the claims pursued by PPT. PPT did not seek to enforce the contract as written, but essentially pursued actions for breach of contract and negligence for failing to procure or secure the requested insurance in accordance with the standard of care. Indeed, the complaint alleged that MCIA was instructed to add the HME to the policy on May 10, 2016, but failed to secure the requested insurance. In light of the claims raised, and the testimony presented at trial, Secura did not demonstrate that the trial court erred.

A. PERTINENT RULINGS

Although both PPT and Secura moved for summary disposition in their favor, the trial court denied Secura's renewed motion for summary disposition in an opinion and order dated January 30, 2019. Specifically, after examining the terms of the agreement between MCIA and Secura, the trial court stated as follows:

> As noted, Secura Insurance expressly authorized MCIA to solicit contracts of insurance. The record also establishes MCIA offered contracts of insurance sold by other insurers. Consequently, MCIA was initially acting as [PPT]'s agent in obtaining insurance coverage through Secura Insurance.
>
> Significantly, Secura Insurance also expressly authorized MCIA to bind policies of insurance and to collect premiums on Secura Insurance's behalf. Additionally, Secura Insurance controlled MCIA's ability to appoint agents, MCIA's ability to accept business from insurance brokers and when commissions would be paid. See *St Clair Intermediate Sch Dist v Intermediate Ed Ass'n/Michigan Ed Ass'n*, 458 Mich 540, 558; 581 NW2d 707, 716 (1998) ("Also fundamental to the existence of an agency relationship is the right to control the conduct of the agent…with respect to the matters entrusted to him"). Therefore, MCIA also subsequently acted as Secura Insurance's agent in handling the insurance sought by [PPT].
>
> Accordingly, MCIA was a dual agent for both PPT and Secura Insurance.

PPT also moved for summary disposition, contending that Secura issued a policy of insurance for the HME and never provided written notice that the truck was no longer insured, and therefore, any cancellation was ineffective. Secura alleged that the truck was never added to the renewal policy, and therefore, it was not required to provide written notice of the policy removal. MCIA added that PPT initially sought to insure the HME, but subsequently informed Marshall of its determination not to insure the truck. Therefore, MCIA alleged that PPT was responsible for a lack of insurance coverage on the truck. The trial court concluded that "the requirement that Secura Insurance provide written notice presupposes Secura Insurance cancelled the insurance policy." The trial court then summarized the evidence presented in the case to determine that PPT's dispositive motion was denied because of factual issues:

> Beverly Jean Marshall testified she is a commercial account manager for MCIA. She stated James Thomas Powers was the agent at MCIA who handled [PPT]. Marshall assisted Powers in servicing [PPT]. Marshall said she would have contact with Brian Pitt and Patricia Pitt when dealing with [PPT]. Marshall agreed a certificate of insurance was issued with respect to the subject truck, binding insurance on the truck through Secura Insurance. Marshall indicated Patricia Pitt subsequently called her (Marshall) on May 27, 2016 to remove the truck's insurance because the truck was not running and [PPT] did not have a driver for it. Marshall sent Secura Insurance an email stating [PPT] was opting not to insure the truck; she did not send anything in writing to [PPT] confirming the deletion of the

truck from the policy. Marshall explained the truck ended up not being added to the policy so no endorsement was ever issued.

Kenneth Pitt testified he began driving the subject truck for [PPT] on May 27, 2016.

Patricia Pitt testified she works for [PPT]. She does not handle insurance for [PPT's] vehicles. Patricia Pitt said Brian Pitt was responsible for handling insurance on the vehicles. Patricia Pitt's discussions with Marshall regarding insurance were essentially limited to worker's compensation insurance. Patricia Pitt understood the subject truck was to have insurance so it could be driven on the roads. She was not aware of any written notice from MCIA or Secura Insurance that insurance on the truck had been revoked or cancelled.

Brian Pitt testified he owns [PPT]. He called Powers at MCIA to insure the subject truck in May 2016. Powers had Brian Pitt contact Marshall to insure the truck. Brian Pitt received a certificate of insurance for the truck from MCIA. He never stopped or revoked the insurance, and did not have any other communications with Marshall or Powers before the accident. Brian Pitt described being shocked when he learned after the accident from Powers that Secura Insurance said the truck was not insured. Brian Pitt denied he would operate a vehicle without insurance. He did not receive anything in writing from MCIA or Secura Insurance that the truck was not insured and Marshall never told him the truck was not insured.

In response to MCIA's requests to admit, Brian Pitt and Patricia Pitt denied Patricia Pitt instructed Marshall not to include the subject truck on the insurance policy on May 27, 2016. Brian Pitt and Patricia Pitt also denied ever asking Marshall to remove the truck from the policy after it had been added to the policy on May 10, 2016.

Consequently, there is a question of fact as to whether Patricia Pitt or Marshall instituted the removal of the subject truck from the policy. The dispute is material to determining the significance of the lack of written notice of the insurance cancellation.

Following the testimony at trial, the trial court issued an opinion and order ruling in favor of PPT. After summarizing the trial testimony, the law addressing breach of contract, and the elements of a claim of negligence, the opinion provided in pertinent part:

In the instant matter, the parties do not dispute [PPT] obtained insurance through Secura Insurance effective April 1, 2016. There is also no dispute that the initial policy did not include coverage for the HME.

The parties agree Brian Pitt contacted Powers on May 10, 2016 to add the HME to the existing Secura Insurance policy. Marshall added the HME to the policy and issued a certificate of insurance for the truck. Bowers admitted MCIA had binding authority to issue the certificate of insurance on Secura Insurance's behalf and to bind Secura Insurance to policies of insurance to vehicles for which

-6-

MCIA had issued certificates of insurance. Bowers also began the underwriting process to add the HME to the policy.

Therefore, [PPT] had a contract with MCIA and Secura Insurance to insure the HME.

Brian Pitt convincingly testified he had sole authority over [PPT's] decisions. Both he and Patricia Pitt stated she only handled insurance issues at his direction.

Brian Pitt credibly testified he did not take any action to cancel the HME's coverage. Patricia Pitt similarly provided credible testimony that she did not tell Marshall on May 27, 2017 [sic] that there was no longer a need to add the HME to the Secura Insurance policy.

Marshall's May 27, 2016 e-mail and testimony regarding that e-mail lack merit. Marshall acknowledged and Hale agreed that the specificity in the May 27, 2016 e-mail was unusual. Marshall, despite noting the importance of doing so, did not note Patricia Pitt's alleged comments—the HME was not running, [PPT] did not have a driver for the HME and there was no need to add the HME at that time—in the AMS System. Marshall also failed to obtain written documentation from [PPT] despite Powers' testimony of the need to do so and [PPT's] established practice of providing written documentation of policy changes.

Moreover, the HME was operational at all times. [PPT] had hired Kenneth Pitt to drive the HME by May 26, 2016. Brian Pitt told Patricia Pitt of Kenneth Pitt's hiring and she prepared an employment application for Kenneth Pitt in advance of Kenneth Pitt's May 27, 2016 start date. Brian Pitt also obtained a check from Patricia Pitt to transfer title to and register the HME in preparation for Kenneth Pitt's use. Brian Pitt presented the certificate of insurance issued by MCIA on Secura Insurance's behalf to the Secretary of State when retitling and registering the HME on May 26, 2016. Kenneth Pitt started driving the HME on May 27, 2017 [sic], Brian Pitt explained that making sure [PPT's] vehicles were insured was an important part of his business; he believed he had obtained valid insurance coverage on the HME. Patricia Pitt would not have allowed Brian Pitt to register the HME with an invalid certificate of insurance and [PPT] did not allow uninsured trucks to be driven on the roads. Powers confirmed he had never known of [PPT] placing an uninsured truck on the road. [PPT] reinstated insurance coverage on the HME through Secura Insurance upon learning the HME lacked coverage.

Therefore, [PPT] has clearly established it did not withdraw its request that the HME be added to the Secura Insurance policy in May 2016. Consequently, Marshall unmistakably breached the agreement to insure the HME and violated the standard of care identified by Hale, MCIA's own expert, when she sent the May 27, 2016 e-mail to Bowers.

Hale and Bowers both testified insurance companies can cancel insurance policies. The Common Policy Conditions required Secura Insurance to provide written notice ten days before cancellation for failure to pay a premium and thirty days before cancellation for any other reason. Neither MCIA nor Secura Insurance provided any notice that the certificate of insurance, which Marshall explained had the effect of insuring the HME with Secura Insurance and Bowers admitted provided coverage during the underwriting period, was cancelled.

As a direct result of MCIA and Secura Insurance's failure to maintain insurance coverage for the HME, [PPT] has incurred costs in defending the primary action and prosecuting the third-party action. Therefore, [PPT] has suffered damages from MCIA and Secura Insurance's actions.

Accordingly, MCIA and Secura Insurance are liable to [PPT] for breach of contract and negligence.

Although the parties may have raised the issue of whether PPT was entitled to notice of cancellation in light of the issuance of the certificate of insurance, the trial court ultimately concluded that MCIA failed to secure the insurance requested by PPT when it wrongfully notified Secura that the request had been withdrawn. Because Secura failed to challenge the basis of the trial court's ruling, the credibility determination of the witnesses, it is not entitled to appellate relief. *Redmond*, 332 Mich App at 449; *Derderian*, 263 Mich App at 381.

### B. TERMS OF INSURANCE ON THE CERTIFICATE

Nonetheless, Secura submits that the certificate of insurance was essentially a "worthless" piece of paper because it only stood for the proposition that the insurance was in place on the day that it was issued. We disagree.

Secura contends that *West American Ins Co v Meridian Mut Ins Co*, 230 Mich App 305; 583 NW2d 548 (1998), demonstrates that the trial court erred. In *West American*, Ann Arbor Carpets, the subrogor of West American Insurance Company (West American), claimed it incurred a loss as a result of Floormaster Floorcovering, Inc's (Floormaster) negligence. The Birch Agency, an independent insurance agency that wrote insurance coverage for Meridian Mutual Insurance Company (Meridian), issued a certificate of insurance to Ann Arbor Carpets indicating that Floormaster had a commercial liability policy with Meridian effective from June 1993 through June 1994. A copy of the certificate of insurance was also sent to Meridian. *Id*. at 307. However, the certificate contained the prominent disclaimer:

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

The certificate of insurance also provided it was subject to all the terms, exclusions and conditions of such policies. Ann Arbor Carpets hired Floormaster and relied on the certificate of insurance. However, in November 1993, Ann Arbor Carpets suffered a loss as a result of Floormaster's negligence, and West American, as Ann Arbor Carpets insurer and subrogee, obtained a default

-8-

judgment against Floormaster. West American then pursued a writ of garnishment against Meridian, but Meridian denied any indebtedness, citing its cancellation of the policy with Floormaster on June 14, 1993. Apparently, before the Birch Agency issued the certificate of insurance, it relied solely on its internal records and did not contact Meridian to verify that the policy was still in effect. Nonetheless, Meridian never notified the Birch Agency that the policy was cancelled. After a one-day bench trial, the trial court ruled in favor of West American concluding that Meridian was equitably estopped because it authorized the Birch Agency to provide certificates of insurance, it intended for entities like Ann Arbor Carpets to rely on the certificate of insurance, it took no action when the Birch Agency issued the certificate of insurance despite receipt of a copy, and Ann Arbor Carpets relied on the certificate of insurance. *Id*. at 309.

This Court reversed because the trial court examined Meridian's failure to take action to prevent Ann Arbor Carpet from relying on the certificate of insurance without expressly finding that Meridian was under any duty or obligation to take such action. This Court concluded that Meridian, as the insurer, did not have a duty to advise a *third party* of inaccuracies in the certificate of insurance because Meridian's agent did not issue the certificate. Rather, the agent of the insured, the Birch Agency acting for Floormaster, issued the certificate. Moreover, this Court rejected the contention that Meridian had a statutory duty because "the certificate of insurance at issue did not purport to represent the terms, benefits or privileges promised under the policy. Instead, its stated purpose was merely to certify that the listed insurance policies had been issued." *Id*. at 310-311. In reaching this conclusion, this Court examined cases from other jurisdictions wherein it was concluded that the certificate of insurance was a "worthless document" which did no more than certify that insurance existed on the date of issuance. Those certificates from other jurisdictions contained language identical with the disclaimer stated in *West American*. *Id*. at 311-312.

Curiously, Secura contends that certificates of insurance are worthless documents, but fails to examine the content of the certificate of insurance issued in this case to determine its value. However, it is not the certificate of insurance itself that is deemed worthless, but rather the language used in the certificate. The *West American* disclaimer expressly stated that it did not confer any rights upon the certificate holder and did not amend, extend, or alter the coverage afforded by the policies below.

The certificate of insurance in this case did not contain the "all capital letter" disclaimer delineated in *West American*. Rather, the certificate of no-fault insurance given to PPT was comprised of two copies, one to be kept with the vehicle and one for the SOS. Both copies identified Secura as the insurance company, the policy number, the year, make, model, and vehicle identification number, the insured [PPT], and the agency issuing the certificate [MCIA]. The certificate of insurance copy to be presented to the SOS stated, in pertinent part, as follows:

> An authorized Michigan insurer certifies that it has issued a policy complying with Act 291, P.A. 1972, as amended for the described motor vehicle.

> \* \* \*

> THIS FORM MUST BE PRESENTED AS EVIDENCE OF INSURANCE WITH YOUR APPLICATION FOR LICENSE PLATES EITHER BY MAIL OR AT ANY SECRETARY OF STATE LICENSE PLATE BRANCH OFFICE. A

PERSON WO ISSUES OR WHO SUPPLIES FALSE INFORMATION TO THE SECRETARY OF STATE OR USES AN INVALID CERTIFICATE OF INSURANCE IS GUILTY OF A MISDEMEANOR PUNISHABLE BY IMPRISONMENT FOR NOT MORE THAN 1 YEAR, OR A FINE OF NOT MORE THAN $1,000.00 OR BOTH.

The certificate of insurance also indicated that the commercial policy was effective "5/10/2016" and its expiration date was "4/1/2017."

We conclude that Secura's reliance on *West American* is misplaced. In *West American*, Ann Arbor Carpets obtained the certificate of insurance from the Birch Agency. The agency was deemed to represent the insured, not Meridian, the insurer. In the present case, the trial court held that the agency agreement between Secura and MCIA demonstrated that MCIA did not act for the sole benefit of PPT as the insured, but rather was a dual agent in light of the terms of their agency agreement. Furthermore, the policy at issue in *West American* expressly stated that the documentation was only informational, did not confer any rights to the holder, and did not amend, extend, or alter the coverage.

However, the certificate of insurance issued by MCIA was authorized by Secura and expressly stated that it complied with Michigan's no-fault act. Furthermore, it was required to be presented to the SOS to register the HME. The document advised that the presenter of an invalid certificate of insurance was subject to a misdemeanor. Thus, the document at issue was not a "worthless" piece of paper, but rather, a document required by Michigan no-fault law. Consequently, Secura's reliance on *West American* is misplaced.

## C. EVIDENCE AT TRIAL

Moreover, the credible evidence elicited at trial belied the contention that the Pitts instructed the HME be removed from addition to the Secura policy. As noted by Bowers, the certificate of insurance was in effect during the underwriting process. Therefore, if the accident had occurred between the time of issuance of the certificate of insurance and during the underwriting process, the HME would have been covered. Brian and Patricia Pitt denied that they withdrew the request to insure the HME because the vehicle was inoperable and without a driver. Rather, in May 2016, the vehicle was insured through Grange Insurance. Brian initially declined to insure the vehicle with Secura because the Grange Insurance was in effect through July 2016. However, when he believed he had hired a driver, he took measures to insure the vehicle with Secura instead, and the certificate of insurance was issued by Marshall.

After the initial driver fell through, Kenneth was hired as the driver for the HME, and Brian expended nearly $1,500 to register the vehicle with the SOS to PPT. The facts indicate that PPT requested insurance for the HME in light of its business experience and history. That is, the Pitts operated their business since the 1990s; Brian knew of the insurance requirements; Brian engaged in yearly meetings to assess PPT's insurance needs; Brian contacted Powers and Marshall to add and remove vehicles, as needed, during the year; the Department of Transportation required that a driver perform an inspection of all operational systems of the vehicle and verify the insurance certificate (here completed by Kenneth); and the HME was insured by Grange prior to the transfer to PPT. These facts contradict Marshall's claim that the insurance request for the HME was

withdrawn. Specifically, in light of the testimony from the Pitts, it is difficult to discern that Patricia would call Marshall and withdraw the request for Secura coverage of the HME, claiming that the vehicle lacked a driver and was inoperable. Moreover, although Marshall conveyed this information to Bowers in an e-mail, Marshall failed to place that information in the AMS system or obtain a written confirmation from Patricia. Thus, Powers and other MCIA agents would not have information that the certificate of insurance issued for the HME failed to comport with the ultimate policy issued by Secura. The certificate of insurance and its contents did not serve as the basis of the trial court's ruling. Instead, the trial court's credibility determination of Marshall led it to conclude that she breached the agreement to insure the HME and violated the standard of care as an agent for Secura. We defer to the trial court's assessment of the credibility of the witnesses and cannot conclude that its factual findings were clearly erroneous under the circumstances. Accordingly, this claim of error is without merit.[2]

## IV. DUTY TO INFORM

Secura next alleges that the trial court erred in finding coverage on the date of the accident because neither Secura nor MCIA had an obligation to notify PPT in writing that the certificate of insurance was no longer effective after May 27, 2016. Again, because Secura does not challenge the basis of the trial court's ruling, a credibility determination, it is not entitled to appellate relief. *Redmond*, 332 Mich App at 449; *Derderian*, 263 Mich App at 381.

After summarizing the evidence presented at trial, the trial court found that Brian and Patricia Pitt testified credibly. However, it concluded that Marshall's testimony lacked merit because it belied other evidence in the case. Thus, the trial court concluded that a breach of contract occurred as well as negligence. The trial court's opinion and order provided, in pertinent part:

> Therefore, [PPT] has clearly established it did not withdraw its request that the HME be added to the Secura Insurance policy in May 2016. Consequently, Marshall unmistakably breached the agreement to insure the HME and violated the standard of care identified by Hale, MCIA's own expert, when she sent the May 27, 2016 e-mail to Bowers.
>
> Hale and Bowers both testified insurance companies can cancel insurance policies. The Common Policy Conditions required Secura Insurance to provide written notice ten days before cancellation for failure to pay a premium and thirty days before cancellation for any other reason. Neither MCIA nor Secura Insurance

---

[2] Secura also contends that Brian was at fault for failing to read the policy because he would have learned that the HME was not insured and that PPT never paid the premium for the HME. This issue was waived because it was not raised in the statement of questions presented. *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 N2d 64 (2019). Moreover, the Pitts relied on the expertise of MCIA, paid over $130,000 in insurance premiums between 2014 and 2016, and their insurance needs were fluid and changed throughout the year contingent on the number of drivers and operable vehicles. Thus, the Pitts relied on MCIA to fulfill their insurance changes as made throughout the policy period.

-11-

provided any notice that the certificate of insurance, which Marshall explained had the effect of insuring the HME with Secura Insurance and Bowers admitted provided coverage during the underwriting period, was cancelled.

Accordingly, the trial court concluded that Marshall breached the parties' contractual agreement and the standard of care for purposes of negligence by failing to secure the insurance requested by PPT because PPT never withdrew its request for insurance on the HME.

To establish an action for breach of contract, a party must show, by a preponderance of the evidence, that: (1) there was a contract; (2) the other party breached the contract; and (3) there were damages incurred by the party claiming breach. *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 393; 964 NW2d 846 (2020) (citation omitted). The plaintiff must prove four elements to establish a prima facie case of negligence: (1) the defendant owed the plaintiff a legal duty; (2) the legal duty was breached by the defendant; (3) the plaintiff suffered damages; and (4) and the defendant's breach was a proximate cause of the plaintiff's damages. *Nyman v Thomson Reuters Holdings, Inc*, 329 Mich App 539, 552; 942 NW2d 696 (2019) (citation omitted the.

The trial court was required to examine whether a duty exists for purposes of negligence as a matter of law. *Graves v Warner Bros*, 253 Mich App 486, 492; 656 NW2d 195 (2002). To maintain a negligence action, a plaintiff must demonstrate that a legal duty exists that requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm. *Id*. (citation omitted). Thus, the relationship between the parties is examined to determine if it is the sort that a legal obligation should be imposed on one for the benefit of another. *Id*. The factors to consider when determining whether a duty exists include "foreseeability of the harm, existence of a relationship between the parties involved, degree of certainty of injury, closeness of connection between the conduct and the injury, moral blame attached to the conduct, policy of preventing future harm, and the burdens and consequences of imposing a duty and the resulting liability for breach." *Krass v Tri-County Security, Inc*, 233 Mich App 661, 668-669; 593 NW2d 578 (1999). Under the common law, an insurance agent owed various fiduciary obligations, including to act for the benefit of the client. See *Harts v Farmers Ins Exch*, 461 Mich 1, 6-7; 597 NW2d 47 (1999). An insurance agent does not have a duty to advise of the *adequacy* of the insurance when it acts as a mere order taker for the insurance company, but a special relationship arises between the agent and the client when the agent undertakes the role of counselor or advisor. See *id*. at 9-10.

Under the circumstances presented here, the trial court found a duty and breach. Indeed, MCIA did not merely act as an order taker for PPT's insurance needs, but served as an advisor. Both Brian and Powers testified that they met yearly to review the insurance requirements for PPT. Additionally, the two discussed modifications to the insurance policy throughout the year as required to add or remove vehicles because of maintenance or driver issues. Powers testified that insurance changes should be in writing. MCIA's expert witness, Michael S. Hale, further opined that *if* Marshall was not given the instruction to remove the HME from the Secura policy during the underwriting process, she breached the standard of care. The trial court found that PPT's actions, including hiring Kenneth as a driver, completing his job application, and registering and insuring the HME, were consistent with its practice of insuring the vehicles that it placed on the road. Yet, Marshall did not fulfill PPT's insurance request, but advised Bowers that PPT no longer wanted to insure the vehicle. Curiously, if Marshall received a call from Patricia to remove the

HME from the Secura policy, Marshall did not request that Patricia send an e-mail or fax to document the removal from coverage.

Because the trial court found a breach of duty and the standard of care by failing to procure the insurance on the HME as requested by PPT, whether or not there was an *additional* duty to issue a cancellation notice is irrelevant. Furthermore, what a certificate of insurance signified as opposed to a policy endorsement also became irrelevant. A theory of liability was established for breach of duty. Whether an obligation to send a written cancellation of the policy was invoked because the HME was never added to the policy through an endorsement does not alter the trial court's conclusion that there was a breach in failing to procure or secure the requested insurance. Accordingly, the trial court's statements regarding cancellation are merely obiter dicta, statements that are unnecessary to determine the case at hand. *Estate of Pearce v Eaton Co Rd Comm*, 507 Mich 183, 197; 968 NW2d 323 (2021). This claim of error does not entitle Secura to appellate relief.[3]

## V. DUAL AGENT

Next, Secura asserts that the trial court erred in concluding that MCIA was the agent for both PPT, as the insured, and Secura, the insurer. We disagree.

"Although an insurance policy is a contractual agreement between the insurer and the insured, an insurance agent typically acts on behalf of the parties to facilitate the sale and execution of the policy. The fiduciary duty that the insurance agent owes each party varies in relation to the agent's status as an independent or exclusive agent." *Genesee Foods Servs v Meadowbrook, Inc*, 279 Mich App 649, 654; 760 NW2d 259 (2008) (citation omitted). "When an insurance policy is facilitated by an independent insurance agent or broker, the independent insurance agent or broker is considered an agent of the insured rather than an agent of the insurer." *Id*. (citation and internal quotation omitted). However, an agent may be held out by the insurer as its agent, and in that instance, the agency cannot be narrowed by limitations on the agent's authority not communicated to the insurer. *Rorick v State Mut Rodded Fire Ins Co*, 263 Mich 169, 171-172; 248 NW 584 (1933). "An insurance company which has received the premium of the insured under circumstances leading the insured to believe he is receiving, in consideration of the payment of such premium, a valid contract of insurance, is estopped from afterward repudiating the contract." *Id*. at 172 quoting *Coverdill v Northern Ins Co*, 243 Mich 395, 398; 220 NW 758 (1925). "[D]ual agency occurs when two persons or entities agree to share the services of an individual for a single act." *Vargo v Sauer*, 457 Mich 49, 69; 576 NW2d 656 (1998).

---

[3] Secura contends, for the first time on appeal, that MCL 500.2273 provides that a certificate of insurance "does not represent an insurer's obligation to give notice of cancellation or nonrenewal to a person." However, the definition of "certificate of insurance" is confined to use within the chapter and addresses "property or casualty insurance coverage." There is no caselaw interpreting MCL 500.2273, and no indication that it was intended to apply to the Michigan No-Fault Act, MCL 500.3101 *et seq*. More importantly, we conclude that MCL 500.2273 has no application here because the trial court did not expressly rule on whether the certificate of insurance or the failure to add and issue an endorsement to the policy triggered the notice provisions of the policy.

The trial court denied Secura's initial motion for summary disposition addressing agency, but allowed Secura the opportunity to revisit the issue by submitting the agency agreement between MCIA and Secura. When the agency agreement was submitted in the renewed dispositive motion, the trial court noted that it contained provisions: (1) allowing MCIA to solicit types of insurance contained in Secura's commission schedule; (2) authorizing MCIA to bind Secura to contracts of insurance; (3) allowing MCIA to collect monies on Secura's behalf and hold the funds as a trustee; (4) authorizing the payment of commissions upon certain conditions; (5) preventing MCIA from appointing agents or to accept business from an insurance broker unless Secura gave its written authorization; (6) characterizing MCIA as an independent contractor and rejecting the creation of an employer/employee relationship; and (7) controlling the payment of the initial premium. Following its examination of these terms of the agency agreement, the trial court concluded:

> As noted, Secura Insurance expressly authorized MCIA to solicit contracts of insurance. The record also establishes MCIA offered contracts of insurance sold by other insurers. Consequently, MCIA was initially acting as [PPT]'s agent in obtaining insurance coverage through Secura Insurance.
>
> Significantly, Secura Insurance also expressly authorized MCIA to bind policies of insurance and to collect premiums on Secura Insurance's behalf. Additionally, Secura Insurance controlled MCIA's ability to appoint agents, MCIA's ability to accept business from insurance brokers and when commissions would be paid. See *St Clair Intermediate Sch Dist v Intermediate Ed Ass'n/Michigan Ed Ass'n*, 458 Mich 540, 558; 581 NW2d 707, 716 (1998) ("Also fundamental to the existence of an agency relationship is the right to control the conduct of the agent…with respect to the matters entrusted to him"). Therefore, MCIA also subsequently acted as Secura Insurance's agent in handling the insurance sought by [PPT].
>
> Accordingly, MCIA was a dual agent for both PPT and Secura Insurance.

The trial court did not err in concluding that a dual agency was established. The trial court was entitled to deviate from the general rule that an agent acts on behalf of the insured under the facts and circumstances of this case. Although PPT engaged MCIA to procure insurance, both Marshall and Powers noted that their agency, MCIA, entered into an agreement with Secura and was obligated to act for the benefit of Secura, but did not convey that information to their clients, here PPT. Nonetheless, Powers claimed that the agency relationship with Secura did not cause him to compromise his obligations to PPT. Furthermore, although Secura noted that the agency agreement nonetheless characterized MCIA as independent, the terms of the agreement itself determined the types of insurance that MCIA could solicit, allowed MCIA to bind Secura to contracts of insurance, governed the collection of premiums and the terms of their payment to MCIA, and limited MCIA's authority to appoint brokers. For a successful claim of vicarious liability, a plaintiff need only prove that an agent has acted negligently. *Grimmer v Lee*, 310 Mich App 95, 101; 872 NW2d 725 (2015). In light of the extensive control exercised over MCIA by Secura in their agreement, Marshall and Powers' awareness of the agreement, and Powers' testimony regarding the allegiance to Secura as a result of the agreement, the trial court was entitled to conclude that MCIA served as a dual agent to both PPT and Secura. Because the trial court

concluded that Marshall breached her duty to procure or secure the requested insurance and breached the standard of care, Secura was properly held vicariously liable under a dual agency theory.

## VI. CONTRACT REFORMATION

Finally, Secura posits that the trial court erred in reforming the insurance contract because a mutual mistake did not occur. Again, because contract reformation was not the ground for the trial court's decision, Secura is not entitled to appellate relief.

"The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). Expectancy damages or damages designed to make the complaining party whole are generally awarded in a common-law breach of contract action. *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 586 n 4; 624 NW2d 180 (2001). These damages include those that naturally arise from the contractual breach or those that the parties contemplated at the time the contract was made. *Id*. The trial court did not improperly reform the insurance policy in the absence of a mutual mistake. Rather, the trial court determined the damages that flowed from the breach of the failure to procure or secure the requested insurance and rendered an award consistent with the policy coverage to which PPT would have been entitled. Although Secura may characterize this as reformation, it is consistent with the damage award for a breach of contract. Thus, this claim of error does not entitle Secura to appellate relief.

## VII. SANCTIONS FOR A FRIVOLOUS DEFENSE

On cross-appeal, PPT contends that the trial court erred in denying its request for sanctions because the defense was frivolous. We disagree.

"A trial court's findings with regard to whether a claim or defense was frivolous, and whether sanctions may be imposed, will not be disturbed unless it is clearly erroneous." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 533; 733 NW2d 57 (2009).

PPT requested sanctions claiming that Marshall's self-serving statements that were not supported by written documentation demonstrated that the defense was frivolous. In an opinion and order, the trial court rejected the motion, stating in pertinent part:

> [PPT] and MCIA had filed competing motions for summary disposition regarding the third-party complaint. The motions were denied . . . because the underlying facts were disputed. Consequently, Secura Insurance and MCIA had a reasonable basis to believe the facts underlying their defenses were true and were not devoid of legal merit.
>
> Moreover, [PPT] concedes this case was complicated, both legally and factually. Though Beverly Marshall's testimony was ultimately found to lack merit, her testimony was not found to be perjurous. [PPT] has also not established Secura Insurance and/or MCIA failed to make a reasonable inquiry into the

truthfulness of Beverly Marshall's testimony or otherwise acted without good faith in defending against the third-party complaint.

We agree that the defense was not frivolous, and the case resolution was premised on the credibility of the witnesses.

The purpose of sanctions in the court rules "is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *FMB-First Mich Bank v Bailey*, 232 Mich App 711, 722-723; 591 NW2d 676 (1998). An attorney must certify that a document is well grounded in fact and not intended for an improper purpose. Sanctions are authorized when a claim is frivolous. "An attorney has an affirmative duty to conduct a reasonable inquiry into the factual and legal viability of a pleading before it is signed." *LaRose Market, Inc v Sylvan Ctr, Inc*, 209 Mich App 201, 210; 530 NW2d 505 (1995). "The reasonableness of the attorney's inquiry is determined by an objective standard, not the attorney's subjective good faith." *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 731; 909 NW2d 890 (2017). "A court must determine whether a claim or defense is frivolous on the basis of the circumstances at the time it was asserted." *Id.* at 732. "[A] claim is devoid of arguable legal merit if it is not sufficiently grounded in law or fact, such as when it violates basic, longstanding, and unmistakably evidentiary precedent." *Adamo Demolition Co v Dep't of Treasury*, 303 Mich App 356, 369; 844 NW2d 143 (2013) (quotation marks and citations omitted).

The trial court's rejection of the challenge to the defense as frivolous was not clearly erroneous. Marshall testified that she was extremely busy, and Powers testified that she was responsible for the computer work for 95% of his business, plus served other agents at MCIA. Bowers made an inquiry twice about the VIN for the HME before Marshall answered. Moreover, just before the insurance issue arose, Brian's father died. It was the defense theory of the case that Patricia made the erroneous decision to change the insurance without consulting with Brian during a stressful time. The insurance decisions occurred in May 2016, but the accident did not occur until September 21, 2016. Therefore, the circumstances surrounding the removal of insurance on the HME did not occur in close proximity to the accident. Marshall testified under oath that she did not make a mistake, and Patricia testified that she did not seek the HME's withdrawal from the Secura policy before the underwriting process was complete. Accordingly, this case presented a classic credibility issue. The defense was not frivolous.

Affirmed. No taxable costs awarded, no party having prevailed.

/s/ Anica Letica
/s/ James Robert Redford
/s/ Michelle M. Rick

-16-