GENESEE FOODS SERVICES, INC v MEADOWBROOK, INC

Docket No. 274517. Submitted December 11, 2007, at Detroit. Decided July 17, 2008, at 9:10 a.m. Leave to appeal sought.

Genesee Foods Services, Inc., and Genesee Management, LLC, brought an action against Meadowbrook, Inc., Rick Smith, and Steve Smith, alleging negligence, breach of fiduciary duty, and breach of a contractual obligation to obtain adequate casualty insurance coverage for the plaintiffs' business. The defendants moved for summary disposition, arguing that the plaintiffs' claims are barred by a release that their principals had executed in favor of Citizens Insurance Company of America (the insurer with whom the defendants had an agency agreement and arranged coverage for the plaintiffs) and its "agents [and] related companies" after settling their insurance claims against Citizens. The court, Joseph J. Farah, J., denied the motion, ruling that there is a question of fact regarding whether the defendants were agents of Citizens or of the plaintiffs. The defendants appealed by leave granted.

The Court of Appeals *held*:

1. An independent insurance agent or broker is considered an agent of the insured rather than an agent of the insurer. The defendants conceded that they are independent insurance agents. As such, they were not released from liability under the terms of the release executed by the plaintiffs' principals.

2. There remains a question of fact regarding whether Meadowbrook is a "related company" of Citizens for purposes of the release.

Affirmed.

KELLY, J., dissenting, stated that Meadowbrook is an agent of Citizens under an agreement those parties executed and that the unambiguous release in favor of Citizens and its agents should be enforced as written. She would reverse the trial court's decision.

INSURANCE — INDEPENDENT AGENTS — AGENCY.

An independent insurance agent, when facilitating an insurance agreement between the insurer and the insured, is an agent of the insured, not the insurer.

*Klemanski & Associates, P.C.* (by *James C. Klemanski*), for the plaintiffs.

*Mellon, McCarthy & Pries, PC* (by *Daniel J. McCarthy* and *Brian R. Harris*), for the defendants.

Before: SAAD, C.J., and OWENS and KELLY, JJ.

OWENS, J. Defendants appeal by leave granted the trial court's order denying their MCR 2.116(C)(7) motion for summary disposition. We affirm.

Genesee Foods Services, Inc. (Genesee Foods), is a food wholesaler and distribution business incorporated by Robert Grabowski and Robert Jackier in April 1999. Its principal place of business was at G-4309 South Dort Highway in Burton, on property owned by Genesee Management, LLC, which Grabowski had organized as a limited liability company in April 1999. The Dort Highway property contained two buildings, an approximately 17,000-square-foot cold storage building and an approximately 800-square-foot one-family house.

Defendant Meadowbrook, Inc. (Meadowbrook), is a commercial insurance agency; defendants Rick and Steve Smith are licensed insurance agents and Meadowbrook employees. In 1988, Meadowbrook signed an agreement to become an agent for Citizens Insurance Company of America (Citizens).[1] The 1988 agreement between Meadowbrook and Citizens began:

> By signing this agreement you become an Agent for the Companies indicated above. You promise to follow our underwriting rules and regulations and the provisions of

---

[1] We will refer to this agreement as the 1988 agreement. In this agreement, Meadowbrook also agreed to become an agent of two other insurance companies. For this reason, the plural form is used in the agreement to refer to these companies.

this agreement. "You" and "your" mean the Agent named above. "We", "us", and "our" mean the Companies named above.

Throughout this agreement, the singular indicates the plural and the plural the singular, where appropriate. The contractual obligations running between each of the Companies and the Agent are severable and distinct. However, any breach of your duties or responsibilities to any of the Companies, or the occurrence of any condition justifying the termination of the contract with any of the Companies, will also give us the right to modify, suspend, or terminate the agreement with any or all of the Companies.

The 1988 agreement also described defendants' authority, duties, and relationship with Citizens. In particular, the 1988 agreement gave Meadowbrook the authority to accept and bind contracts of insurance that Citizens was licensed to write.

According to plaintiffs, in March 2001, Grabowski met with Steve and Rick Smith to discuss obtaining commercial general liability and property insurance from a third-party insurer. Defendants arranged for plaintiffs to purchase an insurance policy through Citizens. When plaintiffs renewed their policy to insure their property for the period between March 2003 and March 2004, the policy provided $771,750 in coverage for the cold storage building, $374,500 in coverage for personal property in the cold storage building, $500,000 in coverage for combined business income and extra expenses, and $105,000 in coverage for the house.

On August 15, 2003, a fire destroyed most of the Dort Highway property and its contents, rendering the businesses inoperable. In October 2003, plaintiffs submitted a claim to Citizens for property damage and business interruption losses sustained in the fire. On November 20, 2005, plaintiffs and Citizens reached a settlement regarding plaintiffs' insurance claims and ex-

ecuted a "Compromise Settlement Release and Hold Harmless Agreement" (2005 release). The 2005 release, signed by both Jackier and Grabowski, read in pertinent part:

> The Undersigned, Genesee Foods Services, Inc., Genesee Management, L.L.C., Robert Jackier and Robert Grabowski, hereby acknowledge receipt from the Citizens Insurance Company of America, the sum of Five Hundred and Fifty Thousand and 00/100 Dollars ($550,000.00), by its checks totaling that amount and made payable as follows: Genesee Foods Services, Inc., Genesee Management, L.L.C., Food Delivery Service, Inc., Robert Jackier and Robert Grabowski, Fifth Third Bank, Associated Adjusters, Inc., and Jackier Gould, P.C. In consideration of said payments, and previous payments made in the form of advances in the amount of Six Hundred and Thirty Thousand Six Hundred and Sixty-Three and 73/100 ($630,663.73) Dollars, the Undersigned do hereby release and forever discharge the Citizens Insurance Company of America and each of its servants, agents, adjusters, employees, attorneys, related companies, parent companies and subsidiaries (hereinafter "Citizens Releasees") of and from any and all claims, debts, dues, actions, causes of actions and demands, whatsoever, which the Undersigned now have or may have against the Citizens Releasees for or on account of any matter or thing that has at any time heretofore occurred, particularly, but without limiting the generality hereof all claims and demands arising out of its policy number 01 MPC 0560795 issued to Genesee Foods Services, Inc., for the premises located at G-4309 South Dort Highway, Burton, Michigan, by reason of fire, smoke, water or other loss to property described within the said Policy occurring on or about June 30, 2003 and August 15, 2003 and all claims and demands arising out of anything said or done by Citizens Releasees, in investigating the said claims, the causes thereof, and/or any other claims of the Undersigned including claims for bad faith, consequential and/or punitive damage.

On November 23, 2005, Citizens issued a final check in the amount of $9,048 to plaintiffs, noting that the check was the full and final payment of claims involving the buildings and of all claims.

Both Grabowski and Jackier claimed that it was not their intent to release defendants from legal liability in connection with procuring insurance policies for plaintiffs and maintained that if defendants had procured adequate insurance coverage for plaintiffs, plaintiffs' payment and settlement would have been significantly greater. Plaintiffs filed an action against defendants on December 16, 2005, alleging that defendants were negligent, breached their fiduciary duty to plaintiffs, and breached their contractual agreement to provide insurance agency services to plaintiffs when they failed to ensure that the insurance policy that they arranged for plaintiffs to purchase would provide plaintiffs with sufficient coverage in the event of a loss. Defendants thereafter moved for summary disposition pursuant to MCR 2.116(C)(7), arguing that when plaintiffs entered the 2005 release with Citizens, they also released defendants of any liability with regard to the 2003 fire. In response, plaintiffs argued that defendants were their agents, not Citizens' agents, and alleged that they were unaware that an agency agreement existed between defendants and Citizens when they executed the release. The trial court denied defendants' motion for summary disposition, concluding that a question of fact remained regarding whether defendants were agents of Citizens or of plaintiffs, but granted defendants' motion for a stay of proceedings pending resolution of this appeal.

Defendants argue that plaintiffs' claims against them were barred by the terms of the 2005 release and that the trial court erred when it failed to grant their

MCR 2.116(C)(7) motion for summary disposition. We disagree. We review de novo a trial court's denial of a motion for summary disposition pursuant to MCR 2.116(C)(7). *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We also review de novo questions regarding the proper interpretation of a contract and whether the language of a contract is ambiguous. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

The central issue presented in this appeal is whether the business relationship between defendants and Citizens was such that defendants were "Citizens Releasees" pursuant to the terms of the 2005 release between Citizens and plaintiffs and, therefore, were released from liability arising from the 2003 fire that destroyed plaintiffs' property.

Although an insurance policy is a contractual agreement between the insurer and the insured, *Zurich-American Ins Co v Amerisure Ins Co*, 215 Mich App 526, 530; 547 NW2d 52 (1996), an insurance agent typically acts on behalf of the parties to facilitate the sale and execution of the policy. The fiduciary duty that the insurance agent owes each party varies in relation to the agent's status as an independent or exclusive agent.

Although no determination was made in the trial court regarding whether defendants were exclusive agents of Citizens or independent insurance agents, defendants conceded at oral arguments that they are independent insurance agents. When an insurance policy "is facilitated by an independent insurance agent or broker, the independent insurance agent or broker is considered an agent of the insured rather than an agent of the insurer." *West American Ins Co v Meridian Mut Ins Co*, 230 Mich App 305, 310; 583 NW2d 548 (1998).

Defendants argue that the plain language of the 2005 release indicates that plaintiffs released both Citizens and defendants from additional liability arising from the 2003 fire. The relevant portion of the contract states that

> the Undersigned do hereby release and forever discharge the Citizens Insurance Company of America and each of its servants, agents, adjusters, employees, attorneys, related companies, parent companies and subsidiaries (hereinafter "Citizens Releasees") of and from any and all claims, debts, dues, actions, causes of actions and demands, whatsoever, which the Undersigned now have or may have against the Citizens Releasees . . . .

The plain language of the 2005 release indicates that "Citizens Releasees" were released from liability arising from the 2003 fire. " 'A release of liability is valid if it is fairly and knowingly made.' " *Wyrembelski v St Clair Shores*, 218 Mich App 125, 127; 553 NW2d 651 (1996), quoting *Adell v Sommers, Schwartz, Silver & Schwartz, PC*, 170 Mich App 196, 201; 428 NW2d 26 (1988). This Court set forth the following rules regarding the scope and interpretation of a release:

> The scope of a release is controlled by the intent of the parties as it is expressed in the release. If the text in the release is unambiguous, we must ascertain the parties' intentions from the plain, ordinary meaning of the language of the release. The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity. A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. If the terms of the release are unambiguous, contradictory inferences become "subjective, and irrelevant," and the legal effect of the language is a question of law to be resolved summarily. [*Gortney v Norfolk & W R Co*, 216 Mich App 535, 540-541; 549 NW2d 612 (1996) (citations omitted).]

"We read contracts as a whole and accord their terms their plain and ordinary meaning." *Scott v Farmers Ins Exch*, 266 Mich App 557, 561; 702 NW2d 681 (2005). "[U]nambiguous contracts . . . are to be enforced as written unless a contractual provision violates law or public policy." *Rory v Continental Ins Co*, 473 Mich 457, 491; 703 NW2d 23 (2005).

The 1988 agreement between Meadowbrook and Citizens created a contractual relationship between those parties; Meadowbrook was given the authority to sell, accept, and bind Citizens to contracts of insurance that Citizens was licensed to write in exchange for a commission on the sale. Pursuant to this agreement, Meadowbrook was authorized to act for or on behalf of Citizens for purposes of accepting and binding Citizens to insurance contracts.

Although defendants had a limited fiduciary relationship with Citizens for purposes of accepting and binding Citizens according to the terms of the 1988 agreement, because defendants were independent insurance agents when they assisted plaintiffs, their primary fiduciary duty of loyalty rested with plaintiffs, who could depend on this duty of loyalty to ensure that defendants were acting in their best interests, both in terms of finding an insurer that could provide them with the most comprehensive coverage and in ensuring that the insurance contract properly addressed their needs. The primacy of this relationship between an insured and an independent insurance agent is reflected in Michigan caselaw, which, as stated earlier, holds that "the independent insurance agent or broker is considered an agent of the insured rather than an agent of the insurer." *West American Ins Co, supra* at 310. Accordingly, because defendants were agents of plaintiffs, not Citizens, defendants were not released from liability arising from the 2003 fire when

plaintiffs signed the 2005 agreement releasing Citizens and its agents from liability. Were we to hold otherwise, we would have to conclude that plaintiffs, in signing the release of Citizens and its agents, intentionally released their own agents (defendants) regarding the very transaction for which defendants owed plaintiffs the primary duty of loyalty and expertise. Such a conclusion would violate reason and common sense.

Defendants also argue that Meadowbrook is a "Citizens Releasee" because it is a "related company." This term is not defined in the 2005 release. This term could have a variety of meanings, as the parties could have intended a "related company" to include a wide variety of organizations affiliated with, working for, or receiving services from Citizens. No clues are provided in the 2005 agreement to further discern the term's meaning and, accordingly, the term is ambiguous. A factual determination is necessary regarding whether the parties intended for Meadowbrook to be released from liability as a "related company" to Citizens.

Defendants also argue that the November 23, 2005, check issued by Citizens in payment for "Full and Final Building & Full and Final All Claims" and accepted by plaintiffs constituted accord and satisfaction of the 2005 agreement. The parties do not dispute that Citizens compensated plaintiffs for their property loss in accordance with the terms of the 2005 agreement. Because defendants are not agents of Citizens and, therefore, would not have been released from liability under this provision of the 2005 agreement, Citizens' issuance of the November 23, 2005, check would not satisfy plaintiffs' claims against defendants. To the extent that a question of fact remains regarding whether Meadowbrook is a "related company" of Citi-

zens, resolution of this issue is premature and we decline to address it at this time.

Affirmed.

SAAD, C.J., concurred.

KELLY, J. (*dissenting*). I respectfully dissent because the terms of the settlement agreement and release are unambiguous and should be enforced as written.

As we stated in *Wyrembelski v St Clair Shores*, 218 Mich App 125, 127; 553 NW2d 651 (1996):

> "Summary disposition of a plaintiff's complaint is proper where there exists a valid release of liability between the parties. MCR 2.116(C)(7). A release of liability is valid if it is fairly and knowingly made. The scope of a release is governed by the intent of the parties as it is expressed in the release.
>
> "If the text in the release is unambiguous, we must ascertain the parties' intentions from the plain, ordinary meaning of the language of the release. The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity. A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation. If the terms of the release are unambiguous, contradictory inferences become 'subjective, and irrelevant,' and the legal effect of the language is a question of law to be resolved summarily." [Citations omitted.]

The rules regarding the interpretation of a release are well established. "The scope of a release is controlled by the language of the release, and where . . . the language is unambiguous," it is construed as written. *Adair v Michigan*, 470 Mich 105, 127; 680 NW2d 386 (2004), citing *Batshon v Mar-Que Gen Contractors, Inc*, 463 Mich 646, 650; 624 NW2d 903 (2001). A release is knowingly made even if it is not labeled a "release," or the releasor failed to read its terms, or thought the

terms were different, absent fraud or intentional mis-representation designed to induce the releasor to sign the release through a strategy of trickery. *Xu v Gay*, 257 Mich App 263, 273; 668 NW2d 166 (2003), citing *Dombrowski v City of Omer*, 199 Mich App 705, 709-710; 502 NW2d 707 (1993).

The settlement agreement at issue here, entitled "Compromise Settlement Release and Hold Harmless Agreement" states that in exchange for payments totaling $1,180,663.73, plaintiffs and their principals

> hereby *release and forever discharge the Citizens Insurance Company of America and each of its servants, agents, adjusters, employees, attorneys, related companies, parent companies and subsidiaries* (hereinafter "Citizens Releasees") of and *from any and all claims, debts, dues, actions, causes of actions and demands, whatsoever,* which [plaintiffs] now have or may have against the Citizens Releasees for or on account of any matter or thing that has at any time heretofore occurred, particularly, but without limiting the generality hereof all claims and demands arising out of its policy number 01 MPC 0560795 issued to Genesee Food Services Inc., for the premises located at G-4309 South Dort Highway, Burton, Michigan, by reason of fire, smoke, water or other loss to property described within said Policy occurring on or about June 30, 2003 and August 15, 2003 and all claim and demands arising out of anything said or done by Citizens Releasees, in investigating the said claims, the causes thereof, and/or any other claims of the [plaintiffs] including claims for bad faith, consequential and/or punitive damage. [Emphasis added.][2]

---

[2] The agreement further states that plaintiffs accepted the consideration "in full compromise, settlement, satisfaction and discharge of any liability" and that plaintiffs agree "to indemnify and hold the Citizens Releasees harmless against all actions, proceedings, claims . . . arising under the Policy for loss and damage to the property insured . . . or by reason of the claims of any person or entity who may claim an interest in the proceeds payable under the Policy."

It is uncontested that an agency agreement was executed between Meadowbrook, Inc. (Meadowbrook), and Citizens Insurance Company of America (Citizens) in June 1988 and was effective on January 1, 1989. This agreement created a contractual relationship between Meadowbrook and Citizens; Meadowbrook was given the authority to sell, accept, and bind Citizens to contracts of insurance that Citizens was licensed to write in exchange for a commission on the sale. Pursuant to this agreement, Meadowbrook was an agent of Citizens for the purpose of accepting and binding insurance policies on behalf of Citizens, including the insurance policy covering plaintiffs' warehouse and its contents. Meadowbrook and its agents were acting within the scope of this agency when they sold the Citizens policy to plaintiffs. The language of the settlement agreement is expansive and all-inclusive. Plaintiffs released agents of Citizens for "any and all claims, debts, dues, actions, causes of actions and demands, whatsoever, which [plaintiffs] now have or may have against the Citizens Releasees [which include Meadowbrook] for or on account of any matter or thing that has at any time heretofore occurred[.]" The very broad language of the settlement agreement releases and discharges any claims plaintiffs may have against Citizens' agents arising out of the fire loss and the policy issued by Citizens to plaintiffs.

Plaintiffs argue that they were unaware of the agency agreement between Meadowbrook and Citizens. That may or may not be true. However, this Court does not consider a unilateral mistake sufficient to modify or reform a previously negotiated agreement. *Casey v Auto- Owners Ins Co*, 273 Mich App 388, 398; 729 NW2d 277 (2006); *Hilley v Hilley*, 140 Mich App 581, 585-586; 364 NW2d 750 (1985). Further, plaintiffs have identified nothing that prevented them from discovering the agency relationship between Meadowbrook and Citi-

zens, and they have made no allegations of fraud, misrepresentation, or trickery that might suggest that the release was not knowingly made. See *Xu, supra* at 272-273. Moreover, at the time they entered into the settlement agreement, plaintiffs were actively contemplating filing the instant suit, and, in fact, did so approximately two weeks after executing the settlement agreement. Nothing prevented them from including or incorporating this anticipated litigation into the settlement agreement. See, e.g., *James v State Farm Fire & Cas Co*, 480 Mich 1014.

Finally, I believe that the trial court erred in effectively reforming the release by refusing to enforce it as written. In *Casey, supra* at 388 we held:

> " 'A court of equity has power to reform the contract to make it conform to the agreement actually made.' To obtain reformation, a plaintiff must prove a mutual mistake of fact, or mistake on one side and fraud on the other, by clear and convincing evidence. A unilateral mistake is not sufficient to warrant reformation. A mistake in law—a mistake by one side or the other regarding the legal effect of an agreement—is not a basis for reformation." [Citations omitted.]

Here, there was no "mutual mistake of fact, or mistake on one side and fraud on the other." Instead, the parties negotiated and entered into an arm's length transaction that resulted in releasing Meadowbrook from liability. Any "mistake" was solely attributable to plaintiffs, and they should not now be heard to complain.

In my opinion, the unambiguous language of the settlement agreement bars plaintiffs' claims against defendants. I would reverse.