*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FIVE WATERS PROPERTIES, LLC, doing
business as SAGINAW CARBON,

        Plaintiff-Appellant,

v

MARK C. BONE and BAILEY AGENCY INC.,

        Defendants-Appellees.

UNPUBLISHED
February 22, 2024

No. 366075
Midland Circuit Court
LC No. 21-007823-CK

Before: M. J. KELLY, P.J., and JANSEN and GARRETT, JJ.

PER CURIAM.

Plaintiff, Five Waters Properties, LLC, appeals as of right the trial court order granting defendants, Mark Bone and Bailey Agency Inc, summary disposition under MCR 2.116(C)(10). Because the trial court did not err by granting defendants' motion for summary disposition, we affirm.

## I. BASIC FACTS

This case stems from the failure of the Edenville Dam and subsequent failure of the Sanford Dam in May 2020, which resulted in a devastating flood that caused substantial damage to homes and business in Midland County, Michigan. Five Waters was one of the businesses affected by the flooding.

Juliana Reineke (Julie Reineke) and her husband, Leland Matthew Reineke (Matt Reineke), are the principal agents for Five Waters. In 2017, Matt Reineke worked with defendant Mark Bone, an independent insurance agent employed by Bailey Agency Inc, to procure a commercial insurance policy for Five Waters. Bone testified that Matt Reineke requested insurance for his business. He did not recall the specific language of the request. In order to determine adequate coverage amounts, he visited Five Waters' facility and walked through it with Matt Reineke. According to Matt Reineke, he determined the value of the equipment and provided that information to Bone. The coverage limits were determined using replacement value. Like Bone, Matt Reineke did not testify as to any specific language that he used when requesting insurance for Five Waters. Following the on-site meeting, Bone procured a commercial insurance policy for

Five Waters that had replacement coverage for Five Waters' equipment in the amounts determined by Matt Reineke.

Shortly after the policy was purchased in 2017, the Midland area experienced flooding. Bone sent a letter to the Reinekes, advising that, in light of the recent flooding, it was "important that we review your policy with you." The letter added that some customers had been unaware of their coverage for water back-up and noted that it would be the "perfect time" to review to ensure "the appropriate amount of coverage." The Reinekes were advised to contact defendants to schedule a review. Although Julie Reineke was aware of the flooding, Matt Reineke did not recall receiving the letter from defendants in 2017. Ultimately, the Reinekes did not contact defendants to review Five Waters' policy.

Five Waters' commercial insurance policy was renewed in 2018, 2019, and 2020. Each year they received correspondence inviting them to schedule a review of Five Waters' policy with defendants. They did not do so. Moreover, they did not fully read the policy procured for Five Waters by Bailey Agency.

After the 2020 flooding, Matt Reineke contacted Bone. It was at that time that he learned from Bone that Five Waters did not have flood insurance. He stated that he was "completely shocked" because he thought that the business was covered. He later read his policy, however, and it clearly provided that damages caused by flooding, including flooding damage occurring as the result of a dam failure, was expressly excluded from the policy. Five Waters filed a claim with their insurance company, but, because the damage caused by the flood was excluded from its coverage, the claim was denied.

Thereafter, in 2021, Five Waters brought a claim against defendants, alleging negligence against them arising from its lack of insurance coverage for flood damage to its Midland business property. Following discovery, defendants moved for summary disposition, arguing that they did not have a duty to advise Five Waters as to the adequacy of its insurance coverage. The trial court agreed and granted their motion for summary disposition. This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Five Waters argues that the trial court erred by granting defendants' motion for summary disposition under MCR 2.116(C)(10). This Court reviews de novo challenges to a trial court's denial of a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).

### B. ANALYSIS

"To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000) (footnote omitted). "Whether a duty is owed is a question of law." *Becker-Witt v Bd of Examiners of Social Workers*, 256 Mich App 359, 364; 663 NW2d 514 (2004). Generally, "an insurance agent owes a duty to

procure insurance coverage requested by an insured." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 37-38; 761 NW 2d 151 (2008). Further, an insurance agent does not generally owe a duty to advise an insured as to the adequacy of its insurance coverage. *Harts v Farmers Ins Exchange*, 461 Mich 1, 8; 597 NW2d 47 (1999).

An insurance agent, however, may owe a duty to advise if "an event occurs that alters the nature of the relationship between the agent and the insured." *Id*. at 10. In *Harts*, our Supreme Court described four events that give rise to a "special relationship" between the insurance agent and the insured such that there is a duty to advise on the part of the agent:

> (1) the agent misrepresents the nature or extent of the coverage offered or provided, (2) an ambiguous request is made that requires a clarification, (3) an inquiry is made that may require advice and the agent, though he need not, gives advice that is inaccurate, or (4) the agent assumes an additional duty by either express agreement with or promise to the insured. [*Id*. at 10-11 (footnotes omitted).]

In this case, Five Waters contends that the no-duty-to-advise rule in *Harts* applies only to captive insurance agents, not to independent insurance agents.[1] This Court, however, has rejected that proposition in multiple unpublished opinions. See *Janovski v S J Ferrari Ins Agency, Inc*, unpublished per curiam opinion of the Court of Appeals, issued May 24, 2016 (Docket No. 326457) (collecting cases); unpub op at 6-7. In *Janovski*, this Court reasoned:

> Although *Harts* was clearly focused on insurance agents whose principal was the insurer, it spoke generally about whether there is any duty owed by insurance agents as to the limited issue of advising about the adequacy or availability of coverage. We concur with the reasoning employed in the above cited cases in concluding that the duty to advise rule from *Harts*, regarding the adequacy or availability of coverage, also applies to an independent agent. While the defendant in *Harts* was a captive rather than an independent insurance agent, *Harts* did not differentiate when framing the issue and rendering its ruling:
>
>> We granted leave in this case to determine whether a licensed insurance agent owes an affirmative duty to advise or counsel an insured about the adequacy or availability of coverage. We hold that, except under very limited circumstances not present in this case, an insurance agent owes no such duty to the insured. [*Harts*, 461 Mich at 2].
>
> The [*Harts*] Court also made the following public policy argument:
>
>> [P]laintiffs encourage this Court to eliminate the general no-duty-to-advise rule and replace it with a rule that would impose a duty to advise in cases

---

[1] Unlike a captive insurance agent, who sells insurance for a single insurance company and is an agent of that insurance company, an independent insurance agent sells insurance for multiple insurance companies and is an agent of the insured. See *Al-Hajjaj v Hartford Accident and Indemnity Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359291); slip op at 4.

such as the one at bar, which, to be perfectly clear, would apparently be all cases concerning the purchase of insurance. However, we decline this invitation in light of the public policy established by the Legislature's active role in this area and the previously noted compelling reasons that militate against the imposition of such a duty. Rather, we agree with the Wisconsin Supreme Court, . . . which, when faced with such an issue, stated that "if such a duty is to be imposed on the [insurance agent], it should be imposed as a statutory one and not an implied judicial one. [*Harts*, 461 Mich at 11–12.]

Further, the [*Harts*] Court discussed MCL 500.2116 and how it treats captive agents the same as independent agents with regard to order-taking functions, as well as MCL 500.1232, which restricts those who can give advice about insurance policies to licensed insurance counselors, aside from "the customary advice offered by a licensed insurance agent." See also *Harts*, 461 Mich at 8–9. Hence, the Court in *Harts* concluded, a licensed insurance agent may give "customary advice," but is not under any duty to do so. *Id*. at 9 n 10. Additionally, we note [that] nothing in the Court's opinion in *Harts* specifically indicated that the Court only intended to address captive agents, rather than independent agents, with regard to the duty at issue. And, although plaintiffs cite cases such as [*Genesee Foods Servs, Inc v Meadowbrook, Inc*, 279 Mich App 649; 760 NW2d 259 (2008)], for the idea that independent agents owe a fiduciary duty to the insured, those cases do not expressly mention a duty to advise the insured about the adequacy of coverage. Accordingly, we conclude that *Harts* applies to the issue before us. [*Janovski*, unpub op at 6-8.]

We find the *Janovski* Court's reasoning to be persuasive, and adopt as our own its holding that *Harts* applies to both captive insurance and independent insurance agents. See *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010) ( noting that although unpublished opinions are not binding, this Court may consider them as persuasive authority).

Five Waters asserts that if *Harts* applies to independent insurance agents, defendants nevertheless owed it a duty because an event occurred that created a special relationship between it and Bone. First, Five Waters asserts that a duty arose because "an ambiguous request [was] made that require[d] clarification." See *Harts*, 461 Mich at 10. We disagree. An example of an "ambiguous request" can include a request for "full coverage," because such a request may require further clarification under some circumstances. *Id*. at 10 n 11. In this case, however, neither Bone nor the Reinekes recalled the exact language used when the Reinekes requested insurance coverage for their business. Rather, the record only reflects that the Reinekes sought and received insurance for their business, with the equipment valued using replacement cost and coverage amounts determined by Matt Reineke. In light of both parties lack of recollection regarding the nature of the coverage requested, we conclude that the record—even when viewed in a light most favorable to Five Waters—does not support a finding that there was an ambiguity requiring clarification.

Next, Five Waters asserts that a duty to advise arose because Bone assumed "an additional duty by either express agreement with or promise to" Five Waters. See *id*. at 10-11. In support, Five Waters points out that Bone performed an on-site inspection to assess the risk to Five Waters

and that Bone had direct knowledge that the area had previously flooded. Five Waters argues that, as a result, Matt Reineke was "left with the impression and confidence that his business was fully covered." Yet, there is no record evidence suggesting that Bone expressly agreed to assume an additional duty to advise or that he expressly promised Five Waters that he assumed such an additional duty. The fact that Matt Reineke had the impression that he was fully covered does not create a special relationship under *Harts*.

Because there is no special relationship between defendants and Five Waters, we conclude that defendants did not have a duty to advise Five Waters as to the adequacy of its coverage.

Five Waters argues that—regardless of what specific coverage it requested—as an independent insurance agent Bone owed it a fiduciary obligation to obtain the *broadest coverage available*. In support Five Waters directs this Court to *Genesee Foods*, 279 Mich App 649. That case, however, held that in the case of an independent insurance agent, the defendants "fiduciary duty of loyalty rested with [the insured], who could depend on this duty of loyalty to ensure that defendants were acting in [its] best interests both in terms of finding an insurer that could provide them with the most comprehensive coverage and in ensuring that the insurance contract properly addressed their needs." *Id*. at 656. Nothing in *Genesee Foods* indicates that the duty to provide the "most comprehensive coverage" includes a duty to provide insurance coverage that has not been requested by the insured or to provide the "broadest coverage available." In this case, Five Waters never requested flood insurance. And, as indicated above, defendants did not have a duty to advise Five Waters that its coverage might be inadequate as the result of not obtaining flood insurance.

Next, as part of its complaint, Five Waters alleged that Bone had special knowledge of the flooding risk to their property as a result of his long-term residency in the area and his community involvement. Bone testified that he has lived in Midland for most of his life and is extensively involved in the community. At his deposition, he testified that he is a Midland County Commissioner and the Chairman of the Board. Further, after the 2020 flooding, he became a member of the Four Lakes Task Force. He testified that the Four Lakes Task Force was attempting to purchase the "dams" prior to the 2020 flooding because they had concerns regarding the maintenance of the dams and knew that repairs needed to be done. He added, however, that there were only small issues and that "nobody had any idea they were going to break." In addition to his awareness that there were maintenance issues with the dams prior to the 2020 flood, Bone also testified that he knew the area where Five Waters' business was located "got wet" in 2017. He stated that flooding "is nothing new" because "all of Midland floods." Nevertheless, he added that he had never been in the area of Five Waters' business when it was flooded.

Five Waters' expert testified that Bone's community involvement elevated his knowledge of the flooding issues in the area. He opined that, as a result of that elevated knowledge, Bone "probably" had a higher standard of care than other insurance agents. However, Five Waters has not directed this Court to any legal authority indicating that an insurance agent's external knowledge of an area requires that agent to advise the insured regarding the adequacy of the coverage or to offer unrequested coverage to such clients. In the absence of any legal authority supporting Five Waters' expert's opinion, it appears that his opinion regarding "best practices" and the duty owed by an insurance agent to an insured is aspirational, but not supported by statute or caselaw.

-5-

In sum, the trial court properly determined that no genuine issue of material fact precluded granting summary disposition for defendants. The trial court correctly determined that defendants did not owe Five Waters a duty to assess and ensure the adequacy of the business insurance coverage and Five Waters failed to establish a special relationship that gave rise to a duty to do so.

Affirmed. Defendants may tax costs as the prevailing parties. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Kristina Robinson Garrett