*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VINING INDUSTRIAL PARK, LLC, and VINING INDUSTRIAL PARK-GA, LLC,

Plaintiffs-Appellants,

v

HOME OWNERS INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
June 12, 2026
10:37 AM

No. 374369
Kent Circuit Court
LC No. 22-011409-CB

Before: CAMERON, P.J., and KOROBKIN and BAZZI, JJ.

PER CURIAM.

Plaintiffs, Vining Industrial Park, LLC, and Vining Industrial Park-GA, LLC, appeal as of right the trial court's order granting summary disposition in favor of defendant, Home Owners Insurance Company,[1] under MCR 2.116(C)(10) (no genuine issue of material fact).[2] We affirm.

---

[1] According to plaintiffs, "The company underwriting the loss was the Defendant in this case, Home-Owners Insurance Company, which is an affiliate of Auto-Owners. In the prior litigation, all of the witnesses referred to Auto-Owners in their deposition testimony, and both parties as well as the Court referred to Auto-Owners in connection with the Motion for Summary Disposition." While we will address Home Owners as "defendant" to avoid further confusion, we provide clarity regarding previous naming conventions.

[2] In this case, Auto-Owners moved for summary disposition pursuant to MCR 2.116(C)(7) (immunity granted by law), (C)(8) (failure to state a claim upon which relief can be granted), and (C)(10), and the trial court did not specifically state which subrule(s) supported its decision. However, we discern from the record that Subrule (C)(10) was the appropriate ground because the court considered evidence beyond the pleadings. *Corbin by Next Friend Corbin v Meemic Ins Co*, 340 Mich App 140, 144; 985 NW2d 217 (2022); see also *Krass v Tri-Co Security, Inc*, 233 Mich App 661, 664-665; 593 NW2d 578 (1999) (providing that when the trial court does not specify "which section of MCR 2.116 the trial court based its ruling, and both the defendant and the trial

-1-

# I.  BASIC FACTS AND PROCEDURAL HISTORY

The pertinent facts were previously summarized in part by this Court in *Vining Industrial Park LLC v JL Schwartz Insurance Agency Inc*, unpublished per curiam opinion of the Court of Appeals, issued May 25, 2023 (Docket No. 361818), pp 1-3:

> Plaintiff Vining Industrial Park, LLC ("Vining") is a limited-liability company owned by Tom Owen.  Vining's assets principally included a 300,000 square foot warehouse building (the "Vining Building") located in Greenville, Michigan.  In 2009, Owen sold 50% of his interest in the Vining Building to plaintiff Vining Industrial Park-GA, LLC, a limited-liability company owned by Anthony Frank.  Defendant J.L. Schwartz Insurance Agency, Inc. ("JLS") is an insurance agency that, at the time of the relevant events, was owned by defendant Jerrold Lee Schwartz.  JLS acted as Vining's insurance agent ever since Vining's inception.
>
> The Vining Building was always insured under policies that set the limits at the "actual cash value" of the Building, as opposed to a "replacement cost" policy.  At the time of the fire that destroyed the Vining Building, the insurance policy stated, in relevant part:
>
> We will determine the value of Covered Property in the event of loss or damage as follows:
>
> A. At Actual Cash Value as of the time of loss or damage . . . .
>
> Owen admitted that when he received policy renewals from Auto-Owners Insurance Company—the company that issued the policy at issue—he would read them.  Owen also acknowledged that he knew the policy for the Vining Building was an "actual cash value" policy, which he described as "replacement cost minus depreciation . . . ."  Although Owen could not pinpoint any specific conversation, he claimed that he was "assured" by Schwartz "15 times" that, regardless of the language in the policy, the coverage would be sufficient to replace 250,000 square feet of the Vining Building should it be declared a loss.
>
> It was Owen's understanding that whatever assurances were made by Schwartz, the source of the information—i.e., the adequacy of the policy limit to rebuild 250,000 square feet—was Auto-Owners.  For his part, Schwartz denied any such conversations took place regarding the adequacy of the coverage before the fire destroyed the Vining Building.  Schwartz also stated that neither he nor his agency would have been capable of independently calculating the replacement cost

court relied on documentary evidence beyond the pleadings in support of the defendant's motion for summary disposition, this Court must construe the defendant's motion as being granted pursuant to MCR 2.116(C)(10)").

of the Vining Building and, thus, would have been unable to provide such assurances.

Although Owen insisted the parties discussed rebuilding 250,000 square feet of the Vining Building should a loss occur, Owen also admitted he never took any independent steps to determine what it would cost to rebuild such a building. According to Owen, "Auto-Owners supplied that information on all of our real estate . . . so I would assume that, you know, their information would be more accurate than what I could provide." Owen claimed it would have been a "monumental task" to determine the replacement cost of 250,000 square feet because he was "not a contractor" and "wouldn't know what they could reuse." Rather, Owen simply stated that he requested that there be sufficient insurance proceeds for "a modern style . . . pre-engineered steel building that we could rebuild 250,000 square feet which we could house the tenant," a company called "LKQ."

On December 7, 2019, a fire occurred at the Vining Building that destroyed the majority of the structure. According to Owen, to rebuild the Vining Building to accommodate LKQ would have cost plaintiffs $55 per square foot, totaling approximately $13,860,000; however, the payment from Auto-Owners created a shortfall of more than $7,000,000. LKQ refused to agree to an increase in rent to cover the shortfall, and plaintiffs decided not to rebuild the Vining Building.

In 2020, plaintiffs filed a complaint against [JLS and Schwartz] in the trial court asserting two claims each of breach of contract and negligence (each pair of counts was asserted against each defendant separately). In the complaint, plaintiffs alleged and admitted that at the time Auto-Owners issued the initial policy in 2005, "Plaintiffs knew the Property was not insured for its full replacement cost value." Plaintiffs therefore "were not likely to rebuild the Property in the same way it had been constructed because the Property was old, the type of frame and construction was cost prohibitive, and its dimensions were not based on the current needs of Plaintiffs' tenant."

[JLS and Schwartz] moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiffs failed to establish any "special relationship" between the parties and, as a result, [JLS and Schwartz] had no duty to advise plaintiffs regarding the adequacy of their coverage. [JLS and Schwartz] highlighted the fact that Owen knew the policy limits and that the policy was for actual cash value, as well as the fact that to the extent representations were made concerning the ability to rebuild 250,000 square feet, those representations came from Auto-Owners. As a result, any claim that [JLS and Schwartz] failed to follow standard customs for insurance agents was meritless because [JLS and Schwartz] had no ability to independently determine if the coverage limits were sufficient. [JLS and Schwartz] also argued that plaintiffs failed to demonstrate any misrepresentation because plaintiffs had the information available to them to determine the truth of the representations.

-3-

The trial court agreed with [JLS and Schwartz's] arguments and granted the motion. This appeal followed.

This Court affirmed, first declining plaintiffs' arguments regarding the significance of the conflicting testimony of how the policy limits were set. *Id*. at 3-4. The Court noted that "according to Owen's testimony, he asked Schwartz to obtain the requested policy, which Schwartz did, only Auto-Owners failed to determine the actual cash value of the Vining Building when it set the limits, even though it assured the parties that such limits would be sufficient for plaintiffs' desired rebuild." *Id*. at 4. This Court resolved, "The trial court accepted these facts as true, as it was required to do under MCR 2.116(C)(10), and nevertheless granted [JLS and Schwartz's] motion in light of those facts. This was not error by the trial court." *Id*.

The *Vining* Court further disagreed that there was a genuine factual dispute regarding whether JLS and Schwartz breached their duty as insurance agents to procure the requested insurance policy. *Id*. at 4-5. This Court provided, "According to Owen's testimony, he asked for and received an actual cash value policy of insurance, which both he and Schwartz believed, on the basis of representations from Auto-Owners, would be sufficient to rebuild 250,000 square feet," and, "Owen stated that each year, he received and read the policy renewals issued by Auto-Owners." *Id*. at 5. In light of the foregoing, the Court determined that there was no breach of JLS and Schwartz's duty to procure because, viewing the evidence in the light most favorable to plaintiffs, "[JLS and Schwartz] did procure the policy but were misled by Auto-Owners regarding the sufficiency of the coverage." *Id*.

This Court further ruled that plaintiffs failed to present sufficient evidence to establish a "special relationship" between plaintiffs and JLS and Schwartz, such that the latter two had a "duty to advise" plaintiffs "regarding the adequacy of the coverage obtained." *Id*. The *Vining* Court reiterated that an insurance agent whose principal is the insurance company did not maintain a general duty to advise those seeking insurance coverage, but it recognized that such a duty may be imposed under certain circumstances. *Id*. Despite the 30-year business relationship between Owen and Schwartz, this Court opined that "the length of the relationship between the agent and the insured is [not a] dispositive factor in transforming the relationship into one in which the traditional common-law 'no duty' principle is abrogated." *Id*., quoting *Harts v Farmers Ins* Exchange, 461 Mich 1, 10; 597 NW2d 47 (1999). The Court additionally determined:

> The simple fact, undisputed by plaintiffs, is that each year Owen received the policy renewals from Auto-Owners. Upon receipt, Owen stated that he read them. Owen also admitted, both in plaintiffs' complaint and his own deposition, that he knew each renewal was a policy for the actual cash value of the Vining Building, which he described as "replacement cost minus depreciation." Nowhere in the policy documents was there any representation that the actual cash value would be sufficient to rebuild to plaintiffs' desired specifications. Because plaintiffs failed to establish that a special relationship arose between the parties, the trial court did not err when it granted summary disposition in favor of [JLS and Schwartz]. [*Id*. at 6.]

Before the issuance of the cited opinion, plaintiffs filed a complaint advancing, in part, negligence and contract reformation claims against defendant, and contending that JLS and

-4-

Schwartz acted "as dual agents for Plaintiffs and for Defendant Home Owners, and, at all relevant times, were authorized by statute and by contract as the agents of Defendant Home Owners to place policies of insurance for property in the State of Michigan with Defendant Home Owners." Regarding negligence, plaintiffs asserted, "Having undertaken the inspection of the Property and the setting of policy's limits, [defendant] owed Plaintiffs a duty of reasonable, ordinary, and prudent care in valuing the Property and in setting the limits of liability," which defendant breached. Concerning reformation, plaintiffs disclaimed, "All the parties intended to insure Plaintiffs' building and business income with sufficient limits of liability to protect Plaintiffs against the risk of loss," and the subject insurance policy should be reformed to remedy this mutual mistake of fact. Plaintiffs attached various commercial building valuation reports, in addition to the parties' insurance policy, to their complaint.

Defendant subsequently moved for summary disposition under MCR 2.116(C)(7) (immunity granted by law), (C)(8) (failure to state a claim upon which relief can be granted), and (C)(10), contending: (1) defendant did not owe plaintiffs a duty to procure adequate insurance coverage to ensure the cost of rebuilding as the insurer, and plaintiffs concede that JLS and Schwartz were their agents as opposed to defendant's agents; (2) "The defendant, in this brief, has set forth an extensive factual record to show that the terms and conditions of the policy covering the property in this case were clear in its terms," such that there was no mutual mistake regarding the subject policy's content to warrant reformation. Defendant attached, in part, plaintiffs' insurance policy to its motion, in addition to Owen's deposition testimony and the motion hearing transcript from the previous lower court litigation involving JLS and Schwartz.

Plaintiffs responded that because JLS and Schwartz acted as dual agents toward plaintiffs and defendant, Schwartz's knowledge of plaintiffs' insurance needs was imputed to defendant, such that "defendant breached its duties to procure insurance consistent with the Plaintiffs' requests." Plaintiffs further asserted that contract reformation was warranted because Owens and Schwartz intended to institute a policy with sufficient limits for a rebuild, indicating a mutual mistake of fact regarding the inadequate policy. Defendant replied that the only duties owed to plaintiffs were delineated under the insurance policy, and there was "no question that the policy in force between the parties on the day of the loss did not contain any obligation on the part of the defendant to ensure that the insurance proceeds would cover the cost to rebuild a 250,000 square-foot pre-engineered building."

Following a hearing, the trial court granted defendant's motion for summary disposition. The court provided, "There is no dispute in this case that Mr. Schwartz is an independent insurance agency and that he could write policies with other companies besides just [defendant]." The court likened the present matter to *Al-Hajjaj v Hartford Accident and Indemnity Co*, 345 Mich App 361, 376; 5 NW3d 353 (2023), and *Genesee Foods Servs, Inc v Meadowbrook, Inc*, 279 Mich App 649, 654; 760 NW2d 259 (2008), opining, "And if I follow [these cases], I have to dismiss this case under summary disposition because . . . Schwartz at the time he was submitting this application was in fact an agent for the insured and not an agent for the insurer, even though he has a dual agency for other purposes." The trial court entered an order consistent with its statements on the record.

Plaintiffs then moved for reconsideration contending that based on the trial court's determination that Schwartz was acting beyond the scope of his agency relationship with

defendant, the court committed "palpable error in concluding that the knowledge Jerry Schwartz gained from his conversations with Tom Owen, that Plaintiffs wanted sufficient insurance to rebuild the property with an approximately 250,000 square feet pre-engineered steel building, was not imputed to Defendant." Plaintiffs further argued that the fiduciary relationship between defendant and Schwartz was broader than those at issue in *Al-Hajjaj* and *Genesee Foods* regarding "premiums, supplies, materials, underwriting rules or standards, and rating information."

The trial court denied plaintiffs' motion for reconsideration. In its opinion and order, the court explained:

> The court's basic holding was this: In keeping with two published decisions of the Court of Appeals, *Al-Hajjaj* . . . and *Genesee Foods Servs* . . . , the court held that, as an independent insurance agent, Jerry Schwartz's primary fiduciary duty was to Vining. Although the agency agreement created a contractual relationship between Schwartz and [defendant], giving Schwartz the authority to solicit, sell, accept and bind [defendant] to contracts of insurance that [defendant] was licensed to sell, Schwartz was acting as Vining's agent when he assured Tom Owens that the policy limits were sufficient to rebuild the factory.

The trial court further stated that under *Al-Hajjaj* and *Genesee Foods*, "the primary fiduciary duty of loyalty" of independent insurance agents rests with the insured, such that an independent insurance agent or broker is generally considered an agent of the insured as opposed to an agent of the insurer. The court additionally noted that while plaintiffs argued that the agency agreement between defendant and JLS was distinct from the ones at issue in *Al-Hajjaj* and *Genesee Foods*, there was "nothing inconsistent with the agency agreement in *Al-Hajjaj* and *Genesee Foods* and the agency agreement at issue here." The trial court opined, "Neither side in this case has suggested that the Schwartz agency agreement is anything but a standard contract between an insurance company and an independent-insurance agent," and, "Like the contract in both Court of Appeals cases, the contract here authorizes [JLS] to solicit, quote and bind insurance of on behalf of [defendant]."

The court further disagreed with plaintiffs' contention that the subject agency agreement contained provisions expanding the authority of JLS and Schwartz simply because it obliged the two to adhere to defendant's rules, regulations, and underwriting standards, and to complete certain documents. The court advanced, "It seems unlikely that an insurance company could operate profitably if it permitted its agents to submit incomplete or improperly filled out forms when the agent is binding coverage," and the contested clauses requiring JLS to comply with defendant's protocol represented limitations on Schwartz's authority. The trial court concluded:

> The simple fact is this: Schwartz had the power to sell [defendant's] policies and temporarily bind coverage. The agency agreement did not authorize Schwartz, on behalf of [defendant], to inspect the property, assess the risk, approve or deny coverage, set appropriate premium rates, or determine specific terms and conditions of the policy. It did not authorize Schwartz to set policy limits. To the extent that Schwartz repeatedly assured Tom Owens that the policy limits were sufficient to rebuild the factory despite the definition of Actual Cash Value, he was doing nothing more than promising his customer that the insurance contract he was

procuring properly addressed his customer's needs. In so doing, he was acting as Vining's agent.

Following the issuance of the cited opinion and order, this appeal ensued.

## II. ANALYSIS

Plaintiffs argue that they advanced a viable claim for negligence against defendant because the improper conduct of Schwartz may be imputed to defendant, as Schwartz acted as a "dual agent" of plaintiffs and defendant. Because the trial court properly determined that *Al-Hajjaj* and *Genesee Foods* govern the present matter, we disagree.

An insurance policy constitutes a contractual agreement between the insurer and the insured. *Zurich American Ins Co v Amerisure Ins Co*, 215 Mich App 526, 530; 547 NW2d 52 (1996). Michigan law has long presumed that the party signing a written contract recognizes the nature of the instrument and understands its contents. *McKinstry v Valley Ob-Gyn Clinic, PC*, 428 Mich 167, 184; 405 NW2d 88 (1987). "When an insurance policy 'is facilitated by an independent insurance agent or broker, the independent insurance agent or broker is considered an agent of the insured rather than an agent of the insurer.'" *Genesee Foods Servs*, 279 Mich App at 654, quoting *West American Ins Co v Meridian Mut Ins Co*, 230 Mich App 305, 310; 583 NW2d 548 (1998). However, an independent insurance agent may simultaneously serve as an agent for the insurer, such that "an insurer may be bound by the acts of a duly-authorized agent acting within the scope of his or her authority." *Opera Block Props, Inc v Auto-Owners Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (Docket No. 365213); slip op at 6. "When an independent agent has been given binding authority, the agent has a limited fiduciary relationship with the insurer." *Id*. at ___; slip op at 6. "Nevertheless, the independent agent's primary fiduciary duty rests with the insured." *Id*. at ___; slip op at 6. "This primary duty does not negate the contractual duty the independent agent owes the insurer, nor does it negate or override the duty it owes to the insured." *Id*. at ___; slip op at 6.

In *Al-Hajjaj*, 345 Mich App at 368-376, this Court addressed whether an independent insurance agency acted as the agent of the insured or as the agent of the insurer when procuring a commercial automobile insurance policy. The *Al-Hajjaj* plaintiff sought insurance coverage for his company's vehicle through an independent insurance agency, whose agent recommended that the plaintiff purchase a policy for his company through the defendant insurer. *Id*. at 364-365. Based on the subsequent application the insurer received from the independent insurance agency, which contained numerous errors, the insurer issued an insurance policy to the plaintiff's company. *Id*. at 365. The plaintiff was subsequently injured in a vehicle collision, but when he sought personal protection insurance benefits from the insurer, the insurer "rescinded the policy based on what it characterized as material misrepresentations in the application," resulting in the plaintiff pursuing legal action against the insurer, the independent insurance agency, and others. *Id*. The insurer moved for summary disposition "arguing that the errors in the application were material because the insurer would not have issued the policy if it had known about them," and that any application errors committed by the independent insurance agency must be imputed to the plaintiff as the principal. *Id*. The trial court disagreed and denied the insurer's motion for summary disposition, "concluding that the contractual relationship between [the insurer] and [the

independent insurance agency] meant that the latter was the agent of the former . . . ." *Id.* at 356-357.

On appeal, this Court reversed, opining that the insurer and the independent insurance agency entered into an agency agreement, which covered the agent as a principal of the independent insurance agency. *Id.* at 375-377. This Court reasoned, "By all accounts, this was a standard contract between an insurance company and an independent-insurance agent," because it permitted the independent insurance agency to "solicit, quote, and bind insurance" on the insurer's behalf, but the contract also materially limited the independent insurance agency's authority. *Id.* at 375. The *Al-Hajjaj* Court, citing *Genesee Foods*, advanced that the contested contract did not modify the common-law principle that the independent insurance agent is considered an agent of the insured rather than the insurer. *Id.* at 375-376. Thus, the independent insurance agency owed its primary fiduciary duty of loyalty to the plaintiff as its customer, rather than to the defendant insurer as one of the ten insurers for which it placed policies. *Id.* at 376. The Court further ruled that while the independent insurance agency had a contractual duty to the insurer, "this did not override or undermine the primary common-law duty that [the independent insurance agency] owed to the insured"; thus, the independent insurance agency was not acting as the insurer's agent with respect to the insurance application that the agency submitted on behalf of the plaintiff's company. *Id.*

The *Al-Hajjaj* Court concluded, "Independent-insurance agents continue to owe their primary fiduciary duty of loyalty to their customers, i.e., the insureds, rather than the insurance companies whose policies they place," such that the trial court erred when it concluded that the contract between the insurer and the independent insurance agency altered this principle. *Id.* at 377. The cited conclusion is consistent with this Court's decision in *Genesee Foods*, 379 Mich App at 653-657, in which it determined that the subject agency agreement permitting the independent insurance agency to sell, accept, and bind the insurer to insurance contracts created a limited fiduciary relationship between the two, such that the independent insurance agency's "primary fiduciary duty of loyalty rested with [the] plaintiffs, who could depend on this duty of loyalty to ensure that [the independent insurance agency and its agents] were acting in their best interests," including "finding an insurer that could provide them with the most comprehensive coverage and in ensuring that the insurance contract properly addressed their needs."

Pursuant to these precedents, JLS and Schwartz's primary fiduciary duty of loyalty was to plaintiffs as the insureds, and plaintiffs failed to establish that the agency agreement between defendant and JLS was materially distinct so as to invest JLS or Schwartz with the authority to set policy limits or permit the imputation of any alleged misconduct to defendant. See *Al-Hajjaj*, 345 Mich App at 375-377; see also *Genesee Foods*, 279 Mich App at 656-657. The pertinent agency agreement granted JLS and its agents the authority to solicit and secure applications and to bind coverage for insurance contracts. The agreement did not expressly empower the independent insurance agency or its agents to perform risk assessments, property inspections, calculations of the relevant premium rates, or a determination of the specific terms and conditions of the policy.

The present case is further distinguishable from *Opera Block*, ___ Mich App at ___; slip op at 5-9, such that JLS and Schwartz were not acting as dual agents in setting the contested insurance policy limits. In *Opera Block*, *id.* at ___; slip op at 5-9, this Court addressed, in part, when an independent insurance agency may be considered a "dual agent" toward the insured and

the insurer, such that the agency's conduct may bind the insurer. The *Opera Block* plaintiff owned multiple commercial buildings and obtained property insurance through an independent insurance agency, which placed coverage with the defendant insurer. *Id*. at ___; slip op at 2. On February 5, 2019, the plaintiff's owner subsequently contacted one of the independent insurance agency's agents, requesting the "best possible coverage for the buildings," resulting in the agent altering the existing policy to include the insurer's "premier, property-plus endorsement." *Id*. at ___; slip op at 2. The independent insurance agent "formally made the requested changes at 10:11 a.m., on February 6, 2019," but she "backdated the changes to 12:01 a.m., February 5, 2019, because that was the day that [plaintiff's owner] requested the changes." *Id*. at ___; slip op at 2. Water backups occurred shortly after these changes, causing substantial damage to plaintiff's property; the insurer denied plaintiff's claims related to the water-backup damage on the basis that the policy changes were effective after the loss. *Id*. at ___; slip op at 2. The plaintiff sued the insurer for breach of contract and sued the independent insurance agency for negligently handling the insurance requests. *Id*. at ___; slip op at 2. The parties filed competing motions for summary disposition, with the trial court ultimately finding: (1) there was no genuine factual dispute that the independent insurance agent bound the insurer to the changes in coverage on February 5, 2019, such that the insurer "breached its duty to cover the loss to the policy's limit of $50,000 per location as a matter of law"; and (2) the plaintiffs failed to establish a question of fact regarding whether the independent insurance agency negligently caused the plaintiff to have insufficient coverage for the loss at issue. *Id*. at ___; slip op at 2-3.

This Court affirmed, opining that the independent insurance agent had the authority as the insurer's duly-authorized agent to bind the insurer to an insurance agreement without first getting its approval, such that the insurer was constrained by her conduct. *Id*. at ___; slip op at 5-6. The *Opera Block* Court recognized that "the independent agent's primary fiduciary duty rests with the insured," but it advanced that this "primary duty does not negate the contractual duty the independent agent owes the insurer, nor does it negate or override the duty it owes to the insured." *Id*. at ___; slip op at 6. The *Opera Block* Court reasoned, "If an agent has the authority to bind an insurer, then it has the authority to effect an insurance binder—a temporary insurance contract that lasts until the insurer issues a formal policy or declines the risk." *Id*. at ___; slip op at 6. This Court explained:

> Although Kiebler Insurance was an independent insurance agent that sold insurance policies for various insurers, it is undisputed that [the insurer] entered into an agency agreement with [the independent insurance agency]. The agreement gave [the independent insurance agency] the "authority to receive applications for contracts of insurance written by [the insurer] and to bind coverage[,]" subject only to certain limitations not relevant here. [The independent insurance agent] testified she had the authority to bind [the insurer], and [the insurer]'s own commercial underwriter, Geoffrey Mack, also agreed that [the agent] had binding authority. Mack stated that binding authority gave the agent the ability to "place coverage with [the insurer] prior to [the insurer] reviewing it." Accordingly, it was undisputed that . . . [the] independent insurance agent, []—acting on behalf of the [independent insurance agency]—was [the insurer's] agent for procuring insurance, but was also an [insurer] limited agent by virtue of her authority to bind it to an insurance agreement without first obtaining its permission. The dispositive

questions were thus whether [the independent insurance agent] exercised her authority to bind [the insurer], and, if so, when she did. [*Id*. at ___; slip op at 7.]

This Court determined that the evidence cited by the parties indicated that the plaintiff's owner and the independent insurance agent reached an agreement on the coverage change for the plaintiff's properties on February 5, 2019, and that the agent committed the insurer to the change by her words and actions. *Id*. at ___; slip op at 8-9.

The *Opera Block* Court, however, ruled that the plaintiffs failed to raise a proper professional negligence claim against the independent insurance agency, because while "[a]n independent insurance agent owes its client a duty of good faith and loyalty," an independent insurance agency "does not have a duty to advise the client about the adequacy of a policy's coverage." *Id*. at ___; slip op at 10. This Court, applying *Harts v Farmers Ins Exch*, 461 Mich 1, 8; 597 NW2d 47 (1999), concluded that the plaintiff failed to demonstrate that the independent insurance agency "breached a duty to advise arising from its special relationship" with the plaintiff, as the plaintiff neglected to present evidence that the independent insurance agency could have provided the insurance requested by the plaintiff, nor that any other insurer would have done so. *Id*. at ___; slip op at 13-14.

Unlike *Opera Block*, which concerned whether an independent insurance agency had the authority to bind the defendant insurer to a policy, the instant case concerns the actual policy limits set forth in the insurance policy itself. Although agreements between insurers and independent insurance agencies commonly authorize such agencies to bind insurers to policies, they generally do not permit those agencies to determine the terms and conditions of the policy, including applicable policy limits. See *Al-Hajjaj*, 345 Mich App at 375-377. Thus, such binding authority does not, without more, render the insurance agency an agent of the insurer for purposes of establishing or altering policy limits.

Further, even assuming that JLS and Schwartz acted as dual agents, such that their conduct could be imputed to defendant, plaintiffs still cannot recover on their negligence claim. In the prior *Vining* opinion, unpub op at 5-6, this Court held that the conduct of JLS and Schwartz—specifically, their purported assurances regarding the adequacy of coverage—was irrelevant in light of the absence of any policy language guaranteeing that the actual cash value would be sufficient to rebuild according to plaintiffs' specifications. The Court additionally ruled that the general no-duty-to-advise rule remained applicable because plaintiff did not establish the existence of a special relationship between the parties. *Id*. Thus, like in *Opera Block*, defendant cannot be held liable for JLS and Schwartz's alleged failure to advise plaintiff regarding coverage limits, even if their conduct was deemed imputable to defendant. *Opera Block*, ___ Mich App at ___; slip op at 13-14.[3]

---

[3] Because the remainder of plaintiffs' arguments depend on the existence of a dual-agency relationship between JLS and Schwartz and defendant, we decline to address those arguments on appeal.

-10-

Affirmed.

/s/ Thomas C. Cameron
/s/ Daniel S. Korobkin
/s/ Mariam S. Bazzi